IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

DAVON RENEE HAYES,                )
                    Petitioner    )
                                  )
        v.                        )
                                  )    Civil Action No. 17-198
ERIC TICE, Superintendent of      )
SCI-Smithfield, et al.            )
                    Respondents   )

## REPLY TO RESPONDENT'S ANSWER TO AMENDED HABEAS CORPUS PETITION PURSUANT TO 28 U.S.C. § 2254

Petitioner Davon Renee Hayes, by and through undersigned counsel, files this Reply to Respondent's Answer to his Amended Habeas Corpus Petition.

## I.    Claims

### A. THE COMMONWEALTH FAILED TO DISCLOSE KEY EYEWITNESS STATEMENTS SHOWING DAVON HAYES WAS NOT INVOLVED IN THE SHOOTING, IN VIOLATION OF *BRADY V. MARYLAND*.

While conceding that Mr. Hayes' *Brady* claim based on Clark and Peterson's statements is exhausted, the Commonwealth argues that it is "based on a false premise,"[1] untimely, and procedurally defaulted, and lacks merit. In analyzing this *Brady* claim based on multiple pieces of evidence suppressed in this case, the Commonwealth subdivides the claim in its analysis, contrary to Supreme Court precedent. Mr. Hayes' *Brady* claim based on the Clark and Peterson information is timely, procedural default poses no impediment to merits review, and relief is warranted on the merits.

---

[1] As this argument is, at its core, a challenge to the merits of Mr. Hayes' *Brady* claim, it is addressed in the discussion of the merits rather than as a separate matter.

1.  **The claim is timely.**

The Commonwealth argues that Mr. Hayes could have discovered Darnell Clark's refusal to identify him sooner with the exercise of due diligence, and therefore argues that that portion of the claim is untimely. Doc. 51 at 20-25. While conceding that a petitioner is generally entitled to presume that the prosecution has complied with its *Brady* obligations, Doc. 51 at 22, the Commonwealth argues that Mr. Hayes can rely on no such presumption because there existed "a reasonable basis for [him] to believe additional investigation [would] yield undisclosed *Brady* material," imposing on him a requirement to "investigate." Doc. 51 at 23 (quoting *Bracey v. Superintendent Rockview, SCI,* 986 F.3d 274, 294 (3d Cir. 2021)). But the facts and holding of *Bracey* defy that assertion.

The Commonwealth claims that Mr. Hayes' knowledge that Darnell Clark provided information to police and made a positive identification of Greg Herring at the time of his trial put him "on notice" of the potential *Brady* information, Doc. 51 at 24-25, but more is required to defeat the presumption that no *Brady* violation occurred. As the Third Circuit explained in *Bracey*, defendant is entitled to presume that no *Brady* information exists unless circumstances supply a "specific 'basis for believing [the prosecution] had failed to comply with *Brady*," *Bracey*, 986 F.3d at 292, or "facts giving him a reasonable basis to suspect a *Brady* violation." *Id.* at 293. In *Bracey*, the Court found that petitioner was entitled to presume no *Brady* violation occurred with respect to witnesses who testified against him at trial and had testified that they received favorable plea agreements on certain charges in

exchange for their testimony. *Id.* at 279. Notwithstanding the fact that petitioner was on notice of facts that could have raised questions about whether *Brady* evidence existed (there, the existence of bargained-for consideration for witness testimony) and that the *Brady* evidence was a matter of public record (cases pending against the witnesses which were not disclosed), the Court found that petitioner was entitled to presume that the Commonwealth had complied with *Brady*. *Id.* at 293, 294.

The circumstances justifying Mr. Hayes' reliance on the presumption that the Commonwealth complied with its *Brady* obligations are even stronger here, where prior to stumbling upon evidence that Clark had refused to make a positive identification of someone police pointed to at the show-up, Mr. Hayes had no "specific basis" to believe that the prosecution had not complied with *Brady.* The Commonwealth fails to show otherwise, and therefore cannot demonstrate that Mr. Hayes could have discovered the violation earlier with the exercise of due diligence.

### 2. Following a hearing, merits relief is warranted.

The Commonwealth concedes that *de novo* review of any claim dismissed as untimely rather than adjudicated on the merits by the state court is appropriate (Doc. 51 at 28), but nonetheless argues that Mr. Hayes' *Brady* claim based on the undisclosed Clark and Peterson statements does not warrant relief. Doc. 51 at 28. To undermine the strength of Mr. Hayes' *Brady* evidence, the Commonwealth subdivides Mr. Hayes *Brady* claim based on the Clark and Peterson information into subclaims, obscuring the cumulative effect of the undisclosed evidence on Mr.

Hayes' trial. *See* Doc. 51 at 28-33 (analyzing Clark refusal to identify Hayes); 36-37 (analyzing Clark reluctance to testify); 39-42 (analyzing Peterson statement). The Supreme Court's decisions in *Kyles v. Whitley* and *United States v. Badgley* require that this Court analyze the cumulative materiality of the undisclosed information in assessing the merits of the claim.

> ### i.    Darnell Clark's statement to police that Davon Hayes was not among the men he'd seen on Moga Street was suppressed within the meaning of *Brady.*

The Commonwealth argues that Clark's testimony and affidavit do not establish that Clark was asked by police to identify Hayes, in particular, and told police he hadn't seen him. Doc. 51 at 30. Based on substantially the same rationale, the Commonwealth claims that Mr. Hayes has misrepresented Clark's statements. *See id.* at 17-19. This argument ignores the clear import of Mr. Hayes' newly discovered evidence, including, but not limited to, Clark's own statements. It also unreasonably assumes that Mr. Hayes must establish the *Brady* violation solely through statements and testimony of Clark, while citing no authority for that proposition.

Both Clark's testimony at Herring's trial and his affidavit clearly state that, during the show up, he was asked to identify one or more persons in addition to Herring, and refused to identify that person. *See* Herring T.T. (Doc. 45, Exhibit C) at 103 ("There was two guys, and at first they pointed at the one guy, and I said, 'No I can't say I seen him'"); Clark Aff. (Doc. 45, Exhibit BB) at ¶ 3 ("Once I reached the playground the detective pointed to one of the detainees and asked if I recognized

him I said 'no.' Then he pointed to a second man, Little Wick, and said, 'Did you see this person in the alley,' and I said, "Yes.' Then they asked if I recognized any of the other guys I had seen on the street, and I said, 'No I only recognized the one guy'). What is more, it is clear from Clark's affidavit that following the show up, he made a statement to police at the homicide office regarding what and who he had seen that day – a fair inference is that he also clarified who he did not see. Clark Aff. (Doc. 45, Exhibit BB) at ¶ 4.

It is undisputed that the fact that Clark told police that at least one person who was the subject of the show up was not among the men he'd seen was not included in the police report of Clark's statement and, consequently, was never disclosed in Mr. Hayes' case. The written police report of Clark's statements and the show up provided in Davon Hayes' discovery made no mention of Clark's refusal to identify anyone who was part of the show up, let alone Hayes in particular. *See* Oct. 9, 2003 Supp. Report – Clark (Doc. 45, Exhibit E). And, according to the prosecutor who handled Davon Hayes' case, she was unaware at the time of Hayes' case that Clark had told police that Hayes was not among the men he'd seen on Moga Street, but had she known she would have disclosed it. *See* Gift Aff. (Doc. 45, Exhibit EE). There was no mention of Clark's refusal to identify any person in the show up (named or unnamed) until Clark's testimony at Herring's trial, after Davon Hayes was convicted and sentenced.

While Clark's testimony and affidavit do not expressly name Davon Hayes as a person Clark told police was not with Herring, they are entirely consistent this

view, and thus the Commonwealth's claim of misrepresentation is a red herring.

Viewing Clark's statements in a vacuum, the Commonwealth wrongly assumes that

Mr. Hayes must establish the *Brady* violation solely through statements of Clark

and without being afforded a hearing to further establish his claim. In doing so, the

Commonwealth completely ignores Antoine Lester's affidavit, which specifically

names Davon Hayes as the person Clark told police was not a person he'd seen. *See*

Lester Aff. (Doc. 45 at 19, Exhibits AA), ¶ 5 ("The detective asked Darnell Clark if

Davon Hayes was another one of the suspects he saw and Darnel Clark said: No I

didn't see him I seen him (Wick) and him (Vick)! . . .").

Mr. Hayes' petition presents compelling evidence that Clark told police that

Hayes was not among the men he had seen on Moga Street around the time of the

shooting and that that statement was suppressed under *Brady*. *See* 2016 Lester Aff.

(Doc. 45, Exhibit Z); Clark Aff. (Doc. 45, Exhibit BB). The Commonwealth points to

no evidence or portion of the record which contradicts Mr. Hayes' version of the

events regarding what Clark told police and what they failed to disclose. To the

extent the Commonwealth disagrees that Clark told police *Hayes*, in particular, was

not among the men he'd seen on Moga Street, it has not established any

misrepresentation by petitioner but merely the existence of a factual dispute

requiring an evidentiary hearing. *See Fooks v. Superintendent, Smithfield SCI*, 96

F.4th 595, 598 (3d Cir. 2024) (where state court did not hold an evidentiary hearing

on federal claim, petitioner entitled to hearing where his "factual allegations, 'if

true, would entitle [him] to federal habeas relief.'"); Doc. 8 (Third Circuit order

finding that Mr. Hayes made "a prima facie showing that his petition relies on newly discovered evidence that, if proven to be true" would entitle him to relief under 28 U.S.C. § 2244(b)(2)).

ii.    **Darnell Clark's reluctance to testify was suppressed within the meaning of *Brady*.**

To defeat Mr. Hayes' claim that Darnell Clark's reluctance to testify at Hayes' trial was among the helpful information the Commonwealth failed to disclose at his trial, the Commonwealth makes a new and entirely speculative argument – that the mention of Davon Hayes' case in the Commonwealth's Motion to Detain Material Witness was a typographical error. Doc. 51 at 34. In the Commonwealth's view, "[i]t seems likely the prosecutor mistakenly wrote 'Devon Hayes' as opposed to 'Greg Herring' in the pleading." *Id.* This is entirely speculative and unsupported where the Commonwealth proffers no evidence to support this claim. There is no basis in the record to doubt the accuracy of the Assistant District Attorney's pleading. The Commonwealth never raised this factual issue in the state proceedings. It is properly rejected. Alternatively, to the extent the Court considers the argument, the Commonwealth has created a factual dispute best resolved through an evidentiary hearing.

iii.    **The state courts' findings with respect to the Commonwealth's failure to disclose Peterson's statement are not subject to Section 2254(d).**

Implicitly conceding that Richard Peterson's statement was suppressed within the meaning of *Brady*, the Commonwealth nevertheless argues that this Court cannot grant habeas relief because Mr. Hayes must and cannot overcome the

requirements of Section 2254(d) with respect to the state court's findings relative to this issue. Doc. 51 at 39-41. This argument is strange given that the Commonwealth (1) elsewhere (and correctly) acknowledges that claims disposed of by the state courts on procedural grounds are not "adjudicate[ed] on the merits" within the meaning of Section 2254(d) (Doc. 51 at 28, 36); and (2) notes that "[t]he state courts expressly held" the claims in Mr. Hayes' Fifth PCRA Petition, including the claim based on Peterson's statement, was "time-barred under the PCRA with no applicable exception." *Id.* at 38.

While the Commonwealth concedes the Clark *Brady* claim was not adjudicated on the merits and thus is reviewed *de novo*, it suggests the opposite with respect to the Peterson *Brady* claim – that a claim dismissed on procedural grounds *was* adjudicated on the merits. *Compare* Doc. 51 at 28, 36 and 38. The Commonwealth makes no effort to reconcile these inconsistent positions relative to the Clark information and the Peterson statement and the application of Section 2254(d). Indeed, they are irreconcilable.

The Commonwealth had it correct when it stated, in the context of the undisclosed Clark information, that federal habeas corpus review is *de novo* where the state courts deny the claims on procedural grounds. " 'Adjudicated on the merits' has a well settled meaning: a decision finally resolving the parties' claims, with res judicata effect, that is based on the substance of the claim advanced, rather than on procedural, or other, ground." *Thomas v. Horn*, 570 F.3d 105, 114 (3d Cir. 2009). Here, the state courts plainly applied a procedural bar to deny Mr. Hayes'

*Brady* claims. The PCRA court found Mr. Hayes ineligible for relief upon concluding that his petition was time barred and that neither the government interference nor new facts exceptions applied. PCRA Ct. Op. (Doc. 45, Exhibit JJ) at 11. In affirming the PCRA court's decision, the Superior Court explained that "[b]ecause the underlying PCRA petition is facially untimely, and because Appellant has failed to prove the applicability of any exception to the PCRA time bar, we shall affirm the order of the PCRA court denying as untimely the Appellant's fifth PCRA petition." Sup. Ct. Op. 918 WDA 2022; 919 WDA 2022 (Doc. 45, Exhibit MM) at 17.[2] As the Commonwealth elsewhere acknowledges, where, as here, the state courts decided the claim based on procedural grounds, Section 2254(d) does not apply.[3]

### iv.    The undisclosed evidence was favorable and material.

Considering each undisclosed item individually, the Commonwealth argues that Mr. Hayes cannot establish that nondisclosure of those items was material in Mr. Hayes' case. *See* Doc. 51 at 30-32, 37, 41. However, as the Supreme Court made clear in *Kyles v. Whitley*, "the state's disclosure obligation turns on the cumulative effect of all suppressed evidence favorable to the defense, not on the evidence considered item by item." 514 U.S. 419, 420 (1995). It is based on that cumulative

---

[2] The same can be said of the denial of the claim in Mr. Hayes' 3rd PCRA petition, which was clearly denied on procedural grounds. *See Commonwealth v. Hayes*, No. 1919 WDA 2016, 2017 WL 5195619 (Pa. Super. Nov. 9, 2017) ("Because Appellant failed to satisfy the exception set forth in Section 9545(b)(1)(ii), we cannot review the merits of Appellant's contentions" and "affirm the order dismissing Appellant's petition as untimely").

[3] The separate question of whether any of the state court findings relative to the Peterson *Brady* claim are entitled to deference under Section 2254(e)(1) is addressed *infra* at 16-18.

assessment that the question of materiality is reached. *See id.* The state's suppression of favorable evidence is material if it can "reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict." *Id.* at 419. Here, contrary to the Commonwealth's arguments, the suppressed evidence was favorable and material, both individually and cumulatively.

Beginning with **Clark's refusal to identify Hayes**, the Commonwealth's claim of a lack of materiality is rather stunning – it argues that suppression of an exculpatory statement by a key eyewitness to events surrounding the homicide did not prejudice Mr. Hayes (Doc. 51 at 30-32), notwithstanding the fact that he was convicted almost solely based on his own alleged confession, which he maintained was false and is otherwise undermined by multiple uncontested witness accounts. *See* Doc. 45 at 54-55 (discussing inconsistencies between Hayes' confession and witness accounts of Darnel Clark, Sylvia Jackson, and others). To get there, the Commonwealth distances Clark's account from its own theory of the shooting, arguing Clark only saw people on Moga Street the morning of the shooting and implying that Clark may not have seen the perpetrators. *Id.* at 31. This position is a marked departure from Commonwealth's assertions in the context of Greg Herring's prosecution for the same offense that "Darnell Clark, provided homicide detectives with information concerning [Herring's] whereabouts immediately *following* the homicide and positively identified him in the area of the homicide," as a basis to justify his detention for purposes of obtaining his testimony at Herring's trial. *See*

Application for Detention of a Material Witness (Doc. 45, Exhibit CC) at 1 (emphasis added).

At argument on that motion, the prosecutor asserted that Clark "is essentially an identification witness and certainly material to the Commonwealth's case." Herring T. T. (Doc. 45, Exhibit C) at 86. In her closing argument at Herring's trial, the prosecutor argued that the perpetrators "fle[d] from the store and [ran] in the direction of Moga Street," (*id.* (Doc. 45, Exhibit C) at 293), and that "the significance of what [Darnell Clark] saw was [Greg Herring] around the corner from the crime scene right in that timeframe, at the end of Moga Way." *Id.* at 296. The same prosecutor provided an affidavit acknowledging that, had she been aware that Clark indicated to police that Hayes was not among the men he'd seen, she would have disclosed it to the defense. Gift Affidavit (Doc. 45, Ex. EE).

Today, the Commonwealth asserts a new theory that Clark saw Herring and others on Moga Street "hours *before*" the shooting. Doc. 51 at 32 (emphasis added). As support for that proposition, the Commonwealth relies heavily on Clark's testimony, on cross-examination, at Herring's trial. Herring T.T. (Doc. 45, Exhibit C) at 278. But the timeline the Commonwealth attempts to construct from that testimony is at odds with statements of the trial prosecutor at Herring's trial and with the police report of Clark's statement drafted immediately after he gave his statement to police. Far from "comport[ing]" with the Commonwealth's proposed timeline, as the Commonwealth claims (Doc. 51 at 32), the report makes clear that Clark must have seen Herring and the other men on Moga Street within minutes

(not hours) of the shooting. According to that report, Clark went to scene a little after 2:00 p.m., and reported going there immediately after his cousin called him; he had seen the men on Moga Street "about two hours before" his cousin's call, so close to 12:00 p.m. (police reported to the scene at 12:20 p.m.). *See* Oct. 9, 2003 Supp. Report – Clark (Doc. 45, Exhibit E). Clark went with officers to the location on Moga Street, and there officers found a black hooded sweatshirt and blue nylon jacket and some bushes, consistent with the theory that the perpetrators went to that location in their immediate flight from the scene. *Id.* All told, that report, drafted close in time to the shooting, supports the Commonwealth's theory at Herring's trial that Clark saw the perpetrators close in time and place to the shooting, and Mr. Hayes' assertion that Clark's refusal to identify him as one of the people he had seen on Moga Street was material to his case. *See id.* There is simply no way to reconcile the details in the report (or the Commonwealth's evidence and argument at Herring's trial) with this new theory about the timing and import of Clark's observations.

In any event, the Commonwealth cannot defeat a finding of materiality, as it does not dispute that no matter the precise timing of events, the men Clark saw on Moga Street were the perpetrators of the robbery/shooting. Nor does it grapple with former Assistant District Attorney Gift's statements supporting a finding of materiality. The fact that Clark did not see Hayes among the perpetrators serves as proof that his supposed confession was false and he is innocent. The trial court did not have Clark's exculpatory statement before it when it accepted Mr. Hayes' confession as true. *Contra* Doc. 51 at 33 (citing TT2 2-3). Had the Commonwealth

not suppressed it, there is a reasonable probability that the outcome of both the suppression hearing and the trial would have been different.

The Commonwealth's claim that the failure to disclose **Clark's reluctance to testify** at Mr. Hayes' trial was not necessarily "favorable" to him is equally surprising and flawed. It argues that, because Clark also was reluctant to testify against Greg Herring and his testimony tended to prove Herring's guilt, that Clark's reluctance to testify at Mr. Hayes' trial might also not be favorable. Doc. 51 at 36-37. From there, the Commonwealth argues that Mr. Hayes also cannot establish prejudice/materiality. *Id.* at 37. This argument ignores the fact that Darnell Clark provided police with *exculpatory* information about Mr. Hayes and *inculpatory* information about Mr. Herring. That fact alone is reason why the Court should not assess Clark's reluctance to testify against Mr. Hayes (a man he told police he had not seen with the others on Moga Street) through the same lens as his reluctance to testify against Mr. Herring (who Clark identified as one of the men he had seen in the alley shortly after the robbery and shooting). Information need not have been favorable to Mr. Herring to be favorable to Mr. Hayes and, even if the Clark's reluctance to testify against Mr. Herring was not prejudicial to Herring, that fact is irrelevant to whether the suppression of Clark's reluctance to testify against Mr. Hayes was material. There is simply no reasonable argument that either piece of suppressed information related to Clark was not favorable.

In *Lambert v. Beard*, the Third Circuit held that the state court's determination that the police activity sheet was not favorable to the defense

13

because it was "ambiguous" involved an unreasonable application of clearly established Supreme Court precedent. 537 Fed. App'x 78, 85-86 (3d Cir. 2013). Quoting *Kyles v. Whitley*, 514 U.S. 419 (1995), the Third Circuit explained that "the Supreme Court has made clear that impeachment evidence is 'favorable to the defense' even if the jury might not afford it significant weight. For example, in *Kyles* [. . .], the Court noted that because certain undisclosed evidence had '*some value* as exculpation and impeachment,' it should be considered in conjunction with the other undisclosed evidence in determining whether *Brady*'s materiality standard is satisfied." *Lambert*, 537 Fed. App'x at 86. The facts concerning Mr. Clark's reluctance to testify against Mr. Hayes is favorable under *Brady*.

Evidence that a critical eyewitness is reluctant to testify for the Commonwealth is unquestionably favorable on its own, even if the reason for the witness's reluctance is unclear. Mr. Hayes could have used Darnell Clark's reluctance to serve as a witness for the Commonwealth as a basis to cast doubt on the Commonwealth's case against him. However, when viewed in context here, where the Commonwealth also failed to disclose that Mr. Clark – the only eyewitness who saw the assailants and was able to make a positive identification – indicated to police Mr. Hayes was not one of the men he saw, Mr. Clark's reluctance to serve as a witness for the Commonwealth was undeniably favorable and exculpatory. Moreover, had the Commonwealth disclosed it tried and failed to get Mr. Clark to testify against Mr. Hayes, Mr. Hayes very likely would have investigated the reason for that reluctance. Such investigation would have led to

discovery that that Clark declined to identify him at the show up and that the Commonwealth had suppressed that fact – additional favorable and material evidence.

The facts that Mr. Clark declined to identify Mr. Hayes and then refused to testify against him, had they been known, would have supplied powerful evidence of Mr. Hayes' innocence and undermined his otherwise questionable statement that he was among the men who were involved, and with it, confidence in the verdict. *See Kyles*, 514 U.S. at 434 (in evaluating materiality, "[t]he question is not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence").

Turning to **Richard Peterson's exculpatory account,** the Commonwealth reasons that Peterson's account does not render Mr. Hayes' participation in the robbery an impossibility, but that is not the question here. Doc. 51 at 41. Peterson's statement has obvious "*value* as exculpation and impeachment" – that Davon Hayes was not with Greg Herring and Victor Starr when they ran to Peterson's home and Herring made a statement implicated only himself and Starr tends to show that Hayes was not involved and casts doubt on the veracity of his confession. *Lambert*, 537 Fed. App'x at 86.

This suppressed statement was material to Mr. Hayes' trial, especially when considered alongside the other undisclosed exculpatory evidence regarding Darnell Clark. That two eyewitnesses to key events surrounding this shooting observed the

assailants, and Davon Hayes was not with them, undermines confidence in the verdict, which rested entirely on Detective Logan's testimony concerning Mr. Hayes' statement, which conflicts with other witness accounts and which Mr. Hayes has consistently maintained was false. Following a hearing to allow Mr. Hayes to present evidence of these *Brady* violations, relief is required.

### 3. Mr. Hayes is entitled a hearing to permit him to present evidence to rebut any state court finding to which the presumption of correctness under 28 U.S.C. § 2254(e)(1) may attach.

In his Amended Petition, Mr. Hayes argues that the state court's finding, in the context of his third PCRA petition, that "Clark's failure to identify [Mr. Hayes] as being implicated in the shooting was known to [Hayes] since October 9, 2003" is clearly erroneous and unworthy of deference under 28 U.S.C. § 2254(e)(1). Doc. 45 at 36-45. In particular, he argues that the factual finding was without an evidentiary basis and clearly erroneous when rendered. *Id.* To the extent this Court disagrees, Mr. Hayes has proffered evidence to rebut that finding requiring a hearing to establish that the presumption has been overborne. *Id.*

The Commonwealth entirely fails to address this argument and does not appear to rely on the state court finding at issue, implicitly conceding that deference to that finding is unwarranted. *See* Doc. 51. Indeed, the only state court factual finding the Commonwealth points to as worthy of deference under Section 2254(e)(1) is the trial court's decision to credit Mr. Hayes' supposed confession, and the trial court's assessment of Davon Hayes' credibility at the time of his trial. Doc. 51 at 33 (citing TT2 2-3). However, Mr. Hayes has proffered substantial evidence

that he is actually innocent – i.e., the statements of Darnell Clark, Richard Peterson, Miracle Smith, and his alibi witnesses. Doc. 45 at 53-59. Mr. Hayes is entitled to an evidentiary hearing to rebut any presumption that the state court's finding that his "confession" was accurate. *See, e.g., Price v. Wainright*, 759 F.2d 1549, 1553 (11th Cir. 1985) ("petitioner becomes entitled to an evidentiary hearing by proffering clear and convincing evidence that raises a substantial, threshold doubt" about state court finding).

As discussed *supra*, the Commonwealth also argues that the state court's findings relative to Peterson's suppressed statement are entitled to Section 2254(d) deference, and Mr. Hayes has already explained why that is wrong. *See supra* at 7-9. However, Mr. Hayes recognizes that the question of whether Section 2254(e)(1)'s presumption of correctness attaches to any of those findings is another matter. That question hinges on whether the finding at issue is factual or legal in nature. While "the underlying factual findings, upon which the [state] court based its conclusions" are, "if fairly supported by the record," "entitled to the statutory presumption of correctness," "legal conclusions reached by the state court" are "not treat[ed] with deference." *Alston v. Redman*, 34 F.3d 1237, 1253 (3d Cir. 1994). The state court "findings" that could be invoked to deny relief here – the PCRA court's findings, accepted by the Superior Court, that "[i]t is not clear that Mr. Peterson's statement amounts to *Brady* material;" that "Peterson's statement is not exculpatory;" and that Mr. Hayes "cannot establish that he was prejudiced by the absence of Richard Peterson's statement from his trial" (PCRA Ct. Op. (Doc. 45, Exhibit JJ) at 8; Sup.

Ct. Op. 918 WDA 2022; 919 WDA 2022 (Doc. 45, Exhibit MM) at 11-12) – are legal conclusions to which Section 2254(e)(1) deference does not attach. Thus, this Court must evaluate those issues *de novo. See Appel v. Horn*, 250 F.3d 203, 210 (3d Cir. 2001) (where state court does not adjudicate claim on the merits, "the federal habeas court must conduct a de novo review over pure legal questions and mixed questions of law and fact," while only "the state court's factual determinations are . . . presumed to be correct" under Section 2254(e)(1)).

### 4. The claim is not procedurally defaulted, but, alternatively, any default should be excused.

The Commonwealth argues that the claim is procedurally defaulted because the state courts found his 5th PCRA Petition was time barred and that Mr. Hayes met neither exception to the one-year filing deadline. Doc. 51 at 26-27, 35, 38. The Commonwealth does not identify when the default occurred. In the 5th PCRA proceedings, the state courts found that this claim was previously litigated.[4] PCRA Ct. Op. (Doc. 45, Exhibit JJ) at 4-6; Sup. Ct. Op. 918 WDA 2022; 919 WDA 2022 (Doc. 45, Exhibit MM) at 16-17. Indeed, Mr. Hayes raised the Clark and Peterson *Brady* claim in his 3rd PCRA petition, albeit without the later obtained Clark affidavit including some additional facts supporting the claim. Oct. 7, 2016 PCRA Petition (Doc. 45, Exhibit S). Because the *Brady* claim was presented in Mr. Hayes'

---

[4] The Third Circuit has held that a Pennsylvania state court's application of the "previously litigated" rule in 42 Pa.C.S. § 9544(a) does not support a finding of procedural default. *See Johnson v. Diguglielmo*, 434 F. App'x 749, 749-50 (3d Cir. 2009) (unpublished) (citing *Boyd v. Warden*, 579 F.3d 330, 370-371 (3d Cir. 2009) (Hardiman, J., dissenting) (en banc)).

3rd PCRA and dismissed on procedural grounds, the procedural default of that claim actually occurred during the 3rd PCRA proceedings.

In that 3rd PCRA proceeding, the Superior Court found his petition facially untimely and that he could not meet the newly discovered evidence exception in 42 Pa.C.S.A. § 9545(b)(1)(ii). *Commonwealth v. Hayes*, No. 1919 WDA 2016, 2017 WL 5195619 (Pa. Super. Nov. 9, 2017). In particular, the Superior Court found that Mr. Hayes could not meet the newly discovered evidence exception because (1) presumably, Mr. Hayes knew or should have known about Herring's 2006 trial at the time it happened, and nothing "prevented him from pursuing the notes of testimony [from Herring's preliminary hearing and trial] sooner," either himself or through counsel (*id.* at 5-6); (2) Mr. Hayes was presumed to know about Darnell Clark's failure to identify him in 2003 and thus the Herring transcripts did not qualify as newly discovered facts (*id.* at 6);[5] (3) presumably nothing prevented Hayes from discovering the information from Antoine Lester sooner (*id.* at 7-8); and (4) at the latest, Mr. Hayes should have filed within 60 days of a June 26, 2016 conversation in which Mr. Hayes allegedly stated that Clark's "testimony would have been helpful to his case had he known about it." *Id.* at 9. The underpinning of this reasoning is the Superior Court's understanding that to meet the newly discovered evidence exception, (1) due diligence requires a petitioner to investigate potential *Brady* violations at the earliest possible opportunity, and even absent

---

[5] This factual finding is clearly erroneous and not entitled to deference. Doc. 45 at 37-45.

information supplying a belief that the Commonwealth had failed to comply with its

*Brady* obligations; and (2) a petitioner is presumed to know facts in the public

domain. Those rules – applied in this case to hold that Mr. Hayes did not meet the

exception in § 9545(b)(1)(ii) – are not adequate and are thus insufficient to find the

claim procedurally defaulted.

A petitioner's failure to meet a state procedural requirement only bars

federal habeas relief absent a showing of cause and prejudice or a fundamental

miscarriage of justice where the state court decision "rests on a state law ground

that is independent of the federal question and adequate to support the judgment."

*Coleman v. Thompson*, 501 U.S. 722, 729 (1991). "A state procedural rule is not an

adequate bar unless it is '"firmly established and regularly followed."'" *Wilson v.

Beard*, 589 F.3d 651, 658 (3d Cir. 2009) (internal citations omitted).

Here, the newly discovered evidence exception applied by the state is not

adequate because it is not firmly established and regularly followed. In particular,

the state court's application of the since-overruled presumption that Mr. Hayes

knew all facts in the public domain (the public records presumption) and related

rule that due diligence required that Mr. Hayes at all times investigate potential

*Brady* violations by the Commonwealth were not firmly established and regularly

followed at the time the state court applied them.

As the Pennsylvania Supreme Court explained, when interpreting 42 Pa.C.S.

§ 9545(b)(1)(ii), it "has held that the newly discovered fact exception is limited by a

presumption relating to matters of public record, pursuant to which a court may

find that information available to the public is not a fact that is 'unknown' to the petitioner." *Commonwealth v. Small*, 662 Pa. 309, 316 (2020). That presumption "exists only because this Court engrafted it upon the statutory language in [*Commonwealth v. Lark*, 560 Pa. 487 (2000)] and then perpetuated our extra-statutory innovation in later cases such as [*Commonwealth v. Chester*, 586 Pa. 468 (2006)] and [*Commonwealth v. Whitney*, 572 Pa. 468 (2003)] without meaningful discussion." *Id. See also Commonwealth v. Hawkins*, 598 Pa. 85, 96–97 (2006) (holding that "[w]hile the 1990 and 1991 testimony did not reveal details of an 'agreement,' the *facts* upon which the claim is predicated are obviously present in the 1990 and 1991 testimony discussed above and were certainly discoverable with any diligence at all."); *Commonwealth v. Fisher*, 582 Pa. 276 (2005) (claim based on expert affidavit was not timely under newly discovered evidence exception because the expert had published his previous research that had been available and discoverable for more than the two years); *Commonwealth v. Edmiston*, 619 Pa. 549, 570-71 (2013) (facts in National Academy of Science Report were not newly discovered evidence, as they "existed in various sources prior to the publication of that report"); *Commonwealth v. Lopez*, 616 Pa. 570, 572 (2012) (information related to trial counsel's disciplinary issues was publicly available for years and easily discoverable, including when petitioner's first PCRA petition was being prepared, so petition was time barred) [6]

---

[6] All of these cases were ultimately overruled by *Small,* 662 Pa. at 340 n.12.

Notwithstanding that precedent, on occasion the Pennsylvania Supreme Court and lower courts departed from that rule. For example, in *Commonwealth v. Bennett*, 593 Pa. 382 (2007), when faced with an issue concerning an undoubtedly "public" record – a Superior Court order entered in Bennett's own case – the Supreme Court found that *Chester* did not control the case since the court order at issue "was a matter of 'public record' only in the broadest sense" and the order would have been sent to counsel, who abandoned Bennett (a prisoner) in the proceedings. *Id.* at 401. Dissenting justices would have applied the public record presumption, finding the case controlled by *Chester. Id.* at 410 (Eakin, J., dissenting) (Castille, J., joining).

Then, in *Commonwealth v. Burton*, 638 Pa. 687 (2017), the Supreme Court held that "however reasonable the public record presumption may be with regard to petitioners *generally*, the presumption cannot reasonably be applied to *pro se PCRA petitioners who are incarcerated.*" *Id.* at 714 (emphasis in original). In his dissent, Justice Baer explained that "the significance of [the public record presumption] is that any fact available through a public record will not be deemed unknown to a PCRA petitioner" and, in his view, "the Majority *sub silentio* has overruled this precedent as it applies to incarcerated *pro se* PCRA petitioners, thereby creating a status-based exception to this rule; an exception that, in [his] view, swallows nearly the entirety of the rule given that incarcerated *pro se* petitioners constitute the group of PCRA petitioners who regularly invokes and relies upon the exceptions to the PCRA's time bar." *Id.* at 721-722 (Baer, J., dissenting). Justice Baer's dissent

demonstrates that even the Pennsylvania Supreme Court's decisions in this area were irreconcilable.

Superior court decisions applying the newly discovered evidence exception also demonstrate a lack of regularity in application. For example, in *Commonwealth v. Davis*, the Pennsylvania Superior Court declined to apply the public records presumption to facts contained in a transcript of public court proceedings based on the rationale that petitioner then "had no reason to seek out transcripts of those witnesses' sentencing hearings in unrelated cases." 86 A.3d 883, 891 (Pa. Super. 2014). That case and holding with respect to the newly discovered evidence exception – focused on whether petitioner had a specific reason to look for the public records at issue, rather than whether petitioner was incarcerated and had counsel – was completely out of step with the Pennsylvania Supreme Court caselaw outlined above. Relatedly, in *Commonwealth v. Medina*, 92 A.3d 1210, 1216-18 (Pa. Super. 2014), the Superior Court found that a recantation of witness who testified at defendant's trial was newly discovered evidence notwithstanding defendant's knowledge, at all times, that the witness's testimony at his trial was false and his failure to contact that witness during the fifteen-year period following his arrest. *Id.* at 1216-1217. But then, in *Commonwealth v. Schultz*, No. 455 EDA 2014, 2014 WL 10788700 (Pa. Super. Ct. Nov. 18, 2014), the Superior Court found that due diligence required defendant to seek out a recantation because he at all times knew that the witness's trial testimony was false and nonetheless waited over years after the trial to locate the witness and convince her to recant her testimony. *Id.* at *6.

These three decisions – all from the same year – are entirely inconsistent in their application, further demonstrating that the rule at issue was not regularly followed.

Ultimately, the Pennsylvania Supreme Court overruled the public record presumption in *Small*. 662 Pa. 309 ("[W]e disavow the public record presumption. To the extent that earlier decisions, including our own, relied upon and applied that presumption to reject a petitioner's claim, they are now overruled."). While that holding – which post-dates the default at issue here – does not impact the adequacy analysis here, its reasoning outlining the doctrine's foundational weakness and the development of exceptions rendering its application inconsistent and unpredictable supports a finding of inadequacy. Even before it was overruled, the public record exception engrafted on the newly discovered evidence exception was neither firmly established nor regularly applied. Thus, the Superior Court's application of that doctrine to find Mr. Hayes' claim untimely is insufficient to support a finding of procedural default.

Alternatively, merits review is warranted notwithstanding any procedural default because the circumstances establish cause and prejudice *and* a miscarriage of justice sufficient to excuse any default (though Mr. Hayes need only establish one of these grounds to excuse any default). A petitioner establishes cause for a default if he "can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488 (1986). "In the specific context of a *Brady* claim, the cause requirement typically parallels the underlying suppression element." *Fisher v. Rozum*, 441 F. App'x 115,

119 (3d Cir. 2011) (citing *Banks v. Dretke*, 540 U.S. 668, 691 (2004)). That is the case here where the Commonwealth's suppression of the Clark and Peterson information prevented Mr. Hayes from raising the *Brady* claim on appeal or in a timely PCRA; Mr. Hayes raised the Clark and Peterson *Brady* violation at the first opportunity (in his third PCRA petition) after he discovered that the evidence had been suppressed. Thus, he has established cause. *See Amadeo v. Zant*, 486 U.S. 214, 222-24 (1988) (state officials prevented petitioner from raising claim by concealing evidence of constitutional violation; procedural default rule did not bar habeas review because was attributable to "some interference by [state] officials" (internal quotation marks omitted)). Just as Mr. Hayes establishes that the undisclosed evidence was material in his case, he establishes prejudice from the suppression of the evidence sufficient to excuse any default. *Banks*, 540 U.S. at 691 ("prejudice within the compass of the 'cause and prejudice' requirement exists when the suppressed evidence is 'material' for *Brady* purposes").

Although this showing of cause and prejudice is sufficient to excuse any default, Mr. Hayes independently satisfies the miscarriage of justice standard because this error "has probably resulted in the conviction of one who is actually innocent." *Murray*, 477 U.S. at 496. For the same reasons, Mr. Hayes satisfies § 2244(b)(2)(B). As explained more fully in his amended petition (*see* Doc. 45 at 45-59), Mr. Hayes has offered evidence to establish that "in light of all of the evidence," "it is more likely than not that no reasonable juror would have convicted him." *Schlup v. Delo*, 513 U.S. 298, 327-328 (1995). Just as Mr. Hayes can satisfy

§ 2244(b)(2)(B)(ii), he can satisfy the miscarriage of justice exception warranting review of an otherwise defaulted claim.

In response, the Commonwealth argues that the new information does not meet the *Schlup* standard. Doc. 51 at 54-55. But that argument rests on a flawed foundation – one that minimizes the importance of Clark's eyewitness account and contradicts the Commonwealth's theory of the offense and argument at Herring's trial, and early reports of Clark's account. Doc. 51 at 54-55. The fact that Clark saw the actors close in time and place to the shooting and Davon Hayes was not among them is not reasonably in dispute. The exculpatory evidence provided by Clark, combined with various other eyewitness and alibi witness accounts, demonstrates that, had the information been presented to the factfinder, it is more likely than not that no reasonable factfinder would have found Mr. Hayes guilty. Upon holding a hearing to permit Mr. Hayes to present newly-discovered evidence of his actual innocence under *Schlup*, this Court should apply the miscarriage of justice exception if necessary to overcome any default, and find that Mr. Hayes satisfies Section 2244(b)(2)(B)(ii).

## B. THE COMMONWEALTH FAILED TO DISCLOSE MIRACLE SMITH'S STATEMENT SHOWING DAVON HAYES WAS NOT INVOLVED IN THE SHOOTING, IN VIOLATION OF *BRADY v. MARYLAND*.

Turning to Mr. Hayes' *Brady* claim based on the Commonwealth's failure to disclose Miracle Smith's statement, the Commonwealth argues that this Court lacks jurisdiction to consider the claim, that merits relief is unwarranted, that the claim is untimely, and that it is procedurally defaulted. The Commonwealth's efforts to

avoid merits review are unavailing, and this Court should grant relief on this claim following a hearing.

### 1. This Court plainly has jurisdiction to reach this claim.

The Commonwealth argues that Mr. Hayes' *Brady* claim based on Miracle Smith's suppressed statement, discovered during the pendency of these proceedings, must be denied for lack of jurisdiction because this claim was not among those pled in the application seeking authorization to file a second or successor petition filed with and granted by the Court of Appeals. Doc. 51 at 43-44. Instead, Mr. Hayes amended his petition to add the Miracle Smith claims after the Court of Appeals granted authorization, consistent with Federal Rule of Civil Procedure 15. *See* Docs. 37, 38, 39. In the Commonwealth's view, 28 U.S.C. § 2244 requires that petitioner obtain additional authorization on any claim he seeks to add to a second or successive habeas petition after he has obtained authorization from the court of appeals to file a second or successor application. Doc. 51 at 43-44. That argument is not supported by the statute or caselaw, which demonstrate that once a petitioner obtains authorization to file a second or successive application under Section 2244(b)(3), amendment of that application to add additional claims is governed by Federal Rule of Civil Procedure 15, rather than Section 2244(b)(3).

The Third Circuit has held that § 2244 "require[s] only that successive *applications*, and not amendments or even necessarily individual claims, be screened by an appellate panel. . . Once one claim has cleared [§ 2244's] high hurdle, we do not dissect the application further." *Reyes v. United States*, 998 F.3d

753, 761 (3d Cir. 2021). In reaching this conclusion, the Court of Appeals noted that nothing in § 2244 "expressly limits a district court's power to permit amendment of a successive motion once the appellate court has screened the application and permitted its filing in district court," and that district courts have discretion to consider such motions pursuant to the standards in Federal Rule of Civil Procedure 15. *Reyes*, 998 F.3d at 761. Under *Reyes*, no further authorization by the Court of Appeals is required here.

As the Court of Appeals granted Mr. Hayes' application to file his pending petition, this Court plainly has jurisdiction to reach all of the claims asserted therein, contrary to the Commonwealth's unsupported argument. *United States v. MacDonald*, 641 F.3d 596, 615-16 (4th Cir. 2011) (holding that "the court erred in deeming itself to be without jurisdiction" over claim "as a result of MacDonald's failure to obtain additional prefiling authorization;" "because we granted 28 U.S.C. § 2244(b)(3) pre-filing authorization for the § 2255 motion raising the Britt claim, the district court possessed jurisdiction over the separate DNA claim insofar as MacDonald had timely and appropriately sought to add it to the pending § 2255 motion"); *United States v. Winestock*, 340 F.3d 200, 205 (4th Cir. 2003) (concluding that, "because the [prefiling] authorization requirement applies to the entire application, the jurisdictional effect of § 2244(b)(3) extends to all claims in the application"). The Commonwealth does not argue that amendment of the petition to add this claim was erroneous or improper. Its argument that this Court has no jurisdiction to reach it is plainly without merit.

## 2. Following a hearing, merits relief is warranted.

The Commonwealth argues that there was no *Brady* violation because the report of the statement was in fact disclosed and, even if it wasn't, it was not material to Mr. Hayes' case. Doc. 51 at 46-47, 50-52. The Commonwealth's arguments must be rejected.

The Commonwealth contends that Miracle Smith's report was provided to Mr. Hayes' counsel at the time of his trial, and thus that his claim is "unfounded." Doc. 51 at 46-47. To establish that the Smith report was provided at the time of trial, the Commonwealth has produced an excerpt from a discovery packet maintained in the Commonwealth's file and an affidavit from a legal assistant at the Allegheny County District Attorney's office regarding her retrieval and photocopying of the discovery packet from the file. Doc. 51 at 47; *see also* Doc. 51, Exhibit 12 at APP599. Notably, the cover letter enclosing the discovery does not provide an itemized list of the discovery being provided. *See* Doc. 51, Exhibit 12 at APP597-598. Consequently, it does not provide any assurance that the Smith report was in fact provided where it was not among the discovery found in Mr. Hayes' prior counsel's file.

Although apparently conceding that Miracle Smith's statement is favorable to Mr. Hayes, the Commonwealth argues that suppression of the report did not "prejudice" Mr. Hayes because, although it implicates others, "it does not exonerate" Mr. Hayes. Doc. 51 at 51. The Commonwealth also seeks to undermine the impact of Smith's statement by claiming that she has "credibility issues," but that

29

argument is belied by the fact that law enforcement took the time to follow up with Smith concerning her statement at the time. Doc. 51 at 51.

The "touchstone of materiality is a 'reasonable probability' of a different result, and the adjective is important. The question is not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence." *Kyles*, 514 U.S. at 434. That the factfinder was not made aware of a witness account of an admission of an uncharged person, who did not mention Mr. Hayes as having participated and whose account differed in key respects from Mr. Hayes version of events relayed to Detective Logan, substantially undermines confidence in the verdict. Mr. Hayes has thus established a *Brady* violation. *See id.* Even if Smith's suppressed statement were not material on its own, a finding of materiality based on the cumulative effect of the Clark, Peterson, and Smith information is inescapable. That Davon Hayes was not among the assailants during events immediately surrounding the shooting according to three separate and witness accounts, two of them essential to the Commonwealth's case against Greg Herring, is both favorable and material. Following a hearing to allow Mr. Hayes to present evidence of his *Brady* violations, relief is required.

### 3. The claim is timely.

The Commonwealth claims that Mr. Hayes was on notice of Smith's statement, requiring him to pursue evidence of the *Brady* violation earlier to establish diligence. Doc. 51 at 48-49. To make this argument, the Commonwealth

speculates that Mr. Hayes "orchestrated Smith's meeting with police," Doc. 51 at 48, although there is no evidence to support that claim; the report itself evinces no such suspicion on the part of police. *See* Oct. 12, 2003 Supp. Report – Smith (Exhibit FF). While the Commonwealth finds it suspect that Smith spoke with police two days after Mr. Hayes was arrested, the timing is unremarkable given that Smith's report was made only three days after the shooting that was the subject of her report. *Id.*

The Commonwealth also argues that a report concerning Smith's January 8, 2004 statement to police referencing "her previous statement on 10/12/2003," put Mr. Hayes on notice of Smith's prior statement. Doc. 51 at 48-49. However, the January 8, 2004 report only provided notice of the fact that Smith made a prior statement, it did not allude to the substance of her statement or indicate that a report concerning the statement existed. *See* Oct. 12, 2003 Supp. Report – Smith (Exhibit FF). On the whole, these circumstances did not supply a "specific 'basis for believing [the prosecution] had failed to comply with *Brady*,'" *Bracey*, 986 F.3d at 292, or "facts giving him a reasonable basis to suspect a *Brady* violation." *Id.* at 293. As Mr. Hayes was entitled to presume that the state complied with its *Brady* obligations, the Commonwealth's claim that due diligence required that he investigate sooner is unpersuasive. This claim is not time barred.

### 4. The claim is not procedurally defaulted.

The Commonwealth argues that the claim is procedurally defaulted because the state court held that the petition in which Mr. Hayes raised the claim was time barred. Doc. 51 at 50. Mr. Hayes raised this claim for the first time in his 5th PCRA

petition, and asserted that although facially untimely, the claim met both the newly discovered evidence and governmental interference exceptions. The state courts disagreed, finding Mr. Hayes met neither exception.

Once again, a petitioner's failure to meet a state procedural requirement only bars federal habeas relief absent a showing of cause and prejudice or a fundamental miscarriage of justice where the state court decision "rests on a state law ground that is independent of the federal question and adequate to support the judgment." *Coleman*, 501 U.S. at 729. A federal habeas court "will presume that there is no independent and adequate state ground for a state court decision when the decision 'fairly appears to rest primarily on federal law, or to be interwoven with the federal law." *Coleman*, 501 U.S. at 735 (quoting *Michigan v. Long*, 463 U.S. 1032, 1040-1041 (1983)).

"[W]hen resolution of the state procedural law question depends on a federal constitutional ruling, the state-law prong of the court's holding is not independent of federal law." *Ake v. Oklahoma*, 470 U.S. 68 (1985) (proceeding to consider merits where state court made application of procedural bar depend on antecedent ruling on federal law, that is, the determination of whether federal constitutional error has been committed). "[W]hether a state law determination is characterized as 'entirely dependent on,' resting primarily on,' or 'influenced by' a question of federal law, the result is the same: the state law determination is not independent of federal law and thus poses no bar to our jurisdiction." *Foster v. Chatman*, 578 U.S. 488, 499 n.4 (2016) (internal citations omitted)

The state courts' application of the state procedural bar in this case fails the adequacy and independence requirement because it depended on a question of federal law. In determining whether they had jurisdiction to review of Mr. Hayes' *Brady* claim even though the petition was facially untimely, the state courts rejected Mr. Hayes' argument that he met the governmental interference exception set forth in 42 Pa.C.S.A. § 9545(b)(1)(i). Analysis under that subsection – essential to the courts' finding that it lacked jurisdiction to consider the merits of Mr. Hayes' claim – collapsed into a determination of whether Mr. Hayes had met the *Brady* standard. *See* Sup. Ct. Op. 918 WDA 2022; 919 WDA 2022 (Doc. 45, Exhibit MM), at 9-12; *see also* PCRA Ct. Op. (Doc. 45, Exhibit JJ), at 6-9. The PCRA court determined that Mr. Hayes could not establish a *Brady* violation and thus failed to satisfy § 9545(b)(1)(i). *See* 918 WDA 2022; 919 WDA 2022 (Doc. 45, Exhibit MM), at 10. The Superior Court "f[ound] no error in the PCRA court's analysis." 918 WDA 2022; 919 WDA 2022, at 12. As the state courts' application of a state procedural bar to merits review of Mr. Hayes' claim depended on its determination of a question of federal law – whether Mr. Hayes met the *Brady* standard, the state procedural rule is not "adequate and independent," and merits review of Mr. Hayes' *Brady* claim is appropriate.

Alternatively, Mr. Hayes' *Brady* claim is reviewable notwithstanding any procedural default because the circumstances establish cause and prejudice *and* a miscarriage of justice sufficient to excuse any default. A petitioner establishes cause for a default if he "can show that some objective factor external to the defense

impeded counsel's efforts to comply with the State's procedural rule." *Murray*, 477

U.S. at 488. "In the specific context of a *Brady* claim, the cause requirement

typically parallels the underlying suppression element." *Fisher*, 441 F. App'x at 119

(citing *Banks*, 540 U.S. at 691). That is the case here where the Commonwealth's

suppression of the Clark and Peterson information prevented Mr. Hayes from

raising the *Brady* claim on appeal or in a timely PCRA; Mr. Hayes raised the Smith

*Brady* violation at the first opportunity after he discovered that the evidence had

been suppressed, in his fifth PCRA petition. Thus, he has established cause. *See*

*Amadeo*, 486 U.S. at 222-24 (state officials prevented petitioner from raising claim

by concealing evidence of constitutional violation; procedural default rule did not

bar habeas review because was attributable to "some interference by [state]

officials" (internal quotation marks omitted)).  Just as Mr. Hayes establishes that

the undisclosed evidence was material in his case, he establishes prejudice from the

suppression of the evidence sufficient to excuse any default. *Banks*, 540 U.S. at 691

("prejudice within the compass of the 'cause and prejudice' requirement exists when

the suppressed evidence is 'material' for *Brady* purposes").

     Although Mr. Hayes can establish cause and prejudice sufficient to excuse

any default, he independently satisfies the miscarriage of justice standard because

this error "has probably resulted in the conviction of one who is actually innocent."

*Murray*, 477 U.S. at 496. For the same reasons, Mr. Hayes satisfies § 2244(b)(2)(B).

As explained more fully in his amended petition (*see* Doc. 45 at 45-59), Mr. Hayes

has offered evidence to establish that "in light of all of the evidence," "it is more

likely than not that no reasonable juror would have convicted him." *Schlup*, 513 U.S. at 327-328. Just as Mr. Hayes can satisfy § 2244(b)(2)(B)(ii), he can satisfy the miscarriage of justice exception warranting review of an otherwise defaulted claim.

In response, the Commonwealth argues that the new information does not meet the *Schlup* standard. Doc. 51 at 54-55. But that argument relies on its baseless attempt to minimize the importance of Clark as an eyewitness by suggesting that the people he saw may not have been the actual perpetrators, contrary to evidence of record and the Commonwealth's own theory at trial. Doc. 51 at 54-55. It should be rejected for the reasons discussed *supra* at 10-13. And while the fact that Clark saw the actors close in time and place to the shooting is not reasonably in dispute, the Commonwealth's position highlights the need for a hearing to resolve any factual questions relative to Mr. Hayes' proffered showing under *Schlup.*

### C. ALTERNATIVELY, TRIAL COUNSEL WAS INEFFECTIVE FOR FAILING TO MAKE USE OF MIRACLE SMITH'S OCTOBER 12, 2003 STATEMENT AT TRIAL.

Turning to Mr. Hayes' alternative ineffective assistance of counsel claim based on counsel's failure to utilize Miracle Smith's statement, the Commonwealth argues that this Court lacks jurisdiction to consider the claim, that merits relief is unwarranted, that the claim is untimely, and that it is procedurally defaulted. The Commonwealth's efforts to avoid merits review are unavailing, and this Court should grant relief on this claim following a hearing.

### 1. This Court plainly has jurisdiction to reach this claim.

For the same reasons this Court has jurisdiction to reach the *Brady* claim based on Miracle Smith's undisclosed statement, it has jurisdiction to reach this alternative ineffective assistance of counsel claim based on the same evidence. *See supra* at 27-28.

### 2. Following a hearing, merits relief is warranted.

While implicitly conceding that counsel's performance was deficient in failing to make use of Miracle Smith's statement at trial, the Commonwealth argues that Mr. Hayes cannot show prejudice from counsel's error. Doc. 51 at 52. However, this argument ignores the impact of Ms. Smith's statement on the case against Mr. Hayes, which consisted entirely of his statement to police. Ms. Smith's recounting of Victor Starr's statement, in which he admitted to participating in the shooting with Greg Herring, offered an account that differed with respect to key details from that offered by Davon Hayes, and failed to mention Davon Hayes as a participant, offered obvious grounds to challenge the veracity of Davon Hayes' statement. Had the factfinder learned of this account, there is a reasonable probability that Mr. Hayes' claim that he had falsely confessed would have been believed. Thus, counsel's failure to utilize Smith's statement at trial constituted ineffective assistance of counsel.

### 3. The claim is timely.

The Commonwealth argues that this claim is not timely because Mr. Hayes was on notice of the missing Smith statement and would have discovered it earlier

had he acted with the requisite diligence. Doc. 51 at 48-49. The newly discovered facts supporting Mr. Hayes' alternative ineffective assistance of counsel claim could not have been discovered previously, even exercising due diligence. This is because trial counsel's file did not contain the report of the October 12, 2003 Miracle Smith statement. Consequently, Mr. Hayes was not on notice that the statement existed, and had no basis upon which to infer that his lawyer rendered ineffective assistance of counsel by failing to utilize Ms. Smith's statement in his defense. Thus, Mr. Hayes satisfies the diligence requirement.

### 4.  The claim is reviewable notwithstanding the procedural default.

The Commonwealth argues that the claim is procedurally defaulted because the state court held that the petition in which Mr. Hayes raised the claim was time barred. Doc. 51 at 50. If this Court finds that the Smith statement was not suppressed, then trial counsel knew or should have known of Smith's statement. And first PCRA counsel knew or should have known of trial counsel's ineffectiveness for failing to utilize Smith's statement at trial. Consequently, the claim was defaulted when appointed PCRA counsel failed to raise it in the first PCRA proceeding.

As post-conviction counsel was ineffective in failing to raise this issue, Mr. Hayes can establish cause for the default under *Martinez v. Ryan*, 566 U.S. 1 (2012), and *Trevino v. Thaler*, 133 S.Ct. 1911 (2013). Under *Martinez*, "[i]nadequate assistance of counsel at initial-review collateral proceedings may establish cause for a prisoner's procedural default of a claim of ineffective assistance at trial."

37

*Martinez*, 566 U.S. at 9. This exception is available if a petitioner can show that his procedurally defaulted ineffective assistance of trial counsel claim has "some merit," and his state-post conviction counsel was "ineffective under the standards of *Strickland v. Washington.*" *Workman v. Superintendent Albion SCI*, 915 F.3d 928, 937 (3d Cir. 2019) (internal citations omitted).

To demonstrate that a claim has some merit, a petitioner must "'show that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further.'" *Workman*, 915 F.3d at 938. The "some merit" standard is different, and less exacting, than the *Strickland* standard. *Id.* at 939.

A petitioner must also show that state post-conviction counsel was ineffective under *Strickland*'s two prongs: "performance" and "prejudice." *Id.* at 938. The "performance" prong is met by a showing that "counsel's representation fell below an objective standard of reasonableness." *Id.* (quoting *Strickland*, 466 U.S. at 687-688). To meet the "prejudice" prong, a petitioner at this stage must show that "the underlying ineffective-assistance-of-trial-counsel claim is 'substantial,' not that a petitioner has, in fact, been 'prejudiced' by trial counsel's deficient performance under *Strickland.*" *Id.* at 939. In other words, if a petitioner "shows that his underlying ineffective-assistance-of-trial-counsel claim has some merit and that his state post-conviction counsel's performance fell below an objective standard of

reasonableness, he has shown sufficient prejudice from counsel's ineffective assistance that his procedural default must be excused under *Martinez*." *Id.* at 941.

Mr. Hayes satisfies both prongs. The trial counsel ineffectiveness claim based on counsel's failure to use Smith's statement at trial has some merit, and PCRA counsel's performance fell below an objective standard of reasonableness in failing to raise it. Certainly, the trial counsel ineffectiveness claim has some merit. The prosecution's case against Mr. Hayes consisted almost entirely of Mr. Hayes' statement to Detective Logan, and counsel offered nothing but Mr. Hayes' own testimony to show that his confession was not true. Had counsel made effective use of Miracle Smith's statement to establish that Starr told Smith he and Herring went into the store alone, counsel could have undermined Mr. Hayes' statement that he acted as a lookout by going to the store with Starr and Herring.

PCRA counsel acted unreasonably in failing to raise the claim. In the event that trial counsel knew or should have known about Smith's statement, PCRA counsel was on notice as well. Rather than raise an ineffective assistance of counsel claim based on counsel's failure to introduce or explore Smith's statement at trial, PCRA counsel filed a "no merit" letter taking the position that Mr. Hayes had not a single meritorious claim for state postconviction relief. PCRA counsel's ineffectiveness in failing to raise the ineffective assistance of trial counsel claim is patent, satisfying *Martinez*. Procedural default does not bar merits review.

Independent of this cause and prejudice showing, Mr. Hayes' ineffective assistance of counsel claim is reviewable notwithstanding any procedural default

because this error "has probably resulted in the conviction of one who is actually innocent." *Murray*, 477 U.S. at 496. Mr. Hayes has offered evidence to establish that "in light of all of the evidence," "it is more likely than not that no reasonable juror would have convicted him." *Schlup*, 513 U.S. at 327-328. *See* Doc. 45 at 45-59. Just as Mr. Hayes can satisfy § 2244(b)(2)(B)(ii), he can satisfy the miscarriage of justice exception warranting review of an otherwise defaulted claim.

In response, the Commonwealth argues that the new information does not meet the *Schlup* standard. Doc. 51 at 54-55. But that argument relies on its baseless attempt to minimize the importance of Clark as an eyewitness by suggesting that the people he saw may not have been the actual perpetrators, contrary to evidence of record and the Commonwealth's own theory at trial. Doc. 51 at 54-55. It should be rejected for the reasons discussed *supra* at 10-13. And while the fact that Clark saw the actors close in time and place to the shooting is not reasonably in dispute, the Commonwealth's position highlights the need for a hearing to resolve any factual questions relative to Mr. Hayes' proffered showing under *Schlup.*

## D. RELIEF IS WARRANTED BECAUSE DAVON HAYES IS ACTUALLY INNOCENT.

Even if this Court were to conclude that relief was not warranted on Mr. Hayes' *Brady* or ineffective assistance of counsel claims, it must grant the writ because Mr. Hayes has presented evidence to establish that he is actually innocent, which, had been presented at trial, would more likely than not have resulted in a not guilty verdict.  In response, the Commonwealth points out that neither the

Supreme Court nor the Third Circuit have granted relief on a freestanding claim of actual innocence (Doc. 51 at 52), but nor have they foreclosed such claims. Following a hearing to permit Mr. Hayes to present evidence that he is actually innocent, relief is warranted.

## II.    Request for an Evidentiary Hearing

Mr. Hayes requests an evidentiary hearing. An evidentiary hearing is warranted in a federal habeas proceeding where such hearing is not barred by AEDPA and petitioner "proffer[s] sufficient evidence to demonstrate that 'a new hearing would have the potential to advance the petitioner's claim.'" *Siehl v. Grace*, 561 F.3d 189, 197 (3d Cir. 2009) (internal citation omitted). In *Siehl*, the Third Circuit found that petitioner made a "prima facie showing . . . sufficient to entitle him to an evidentiary hearing in the District Court if through no fault of his own he was unable to establish the necessary record in the state courts," where he tendered a report that, if credited, supported his ineffective assistance of counsel claim. *Id.*

Mr. Hayes has tendered sufficient evidence warranting a hearing affording him an opportunity to present evidence to (1) make the required showing under § 2244(b)(2)(B) that, but for constitutional error, no reasonable factfinder would have found him guilty; (2) prove actual innocence under *Schlup*; (3) to rebut the presumption of correctness of state court factual findings under § 2254(e)(1); and (4) to establish his entitlement to relief on his federal constitutional claims. *See* Doc. 45 at 75-76. The Commonwealth addresses only Mr. Hayes' argument that a hearing is warranted on his constitutional claims, and argues that Mr. Hayes must satisfy 28

U.S.C. § 2254(e)(2) in order to establish his entitlement to a hearing. Doc. 51 at 56. That provision provides that "[i]f the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless" the applicant meets certain criteria. 28 U.S.C. § 2254(e)(2).

As the Third Circuit recently explained, § 2254(e)(2)'s limitation "does not apply" where petitioner "never '*failed* to develop the factual basis of his claim,'" but instead "promptly sought 'an evidentiary hearing in the manner required by state law'" but "[t]he state court just refused." *Fooks*, 96 F.4th at 597 (reversing and remanding for evidentiary hearing). *See also Siehl*, 561 F.3d at 197 (explaining that "AEDPA and uniform case law interpreting it provide that if the habeas petition 'has diligently sought to develop the factual basis of a claim for habeas review, but has been denied the opportunity to do so by the state court, [AEDPA] will not preclude an evidentiary hearing in federal court;'" reversing and remanding for evidentiary hearing) (internal citation omitted).  That is precisely what happened here – Mr. Hayes requested an evidentiary hearing on these claims, and the state courts refused. *See* Oct. 7, 2016 PCRA Petition (Doc. 45, Exhibit S); July 30, 2020 Amended PCRA Petition (Doc. 45, Exhibit W). *Fooks* and *Siehl* makes clear that, under these circumstances, Section 2254(e)(2) poses no impediment to an evidentiary hearing.

But, even if this Court were to conclude (erroneously) that Mr. Hayes failed to develop the factual basis of one or more claims and thus apply § 2254(e)(2), a

hearing is nevertheless warranted. As the Third Circuit has already determined that he made "a prima facie showing that his petition relies on newly discovered evidence that, if proven to be true" would entitle him to relief under similarly-worded § 2244(b)(2), Mr. Hayes satisfies § 2254(e)(2). Doc. 8.

The Commonwealth separately argues that Mr. Hayes' *Brady* claim relative to Richard Peterson's statement was "adjudicated on the merits," and thus *Cullen v. Pinholster*, 573 U.S. 170 (2011), requires Hayes to overcome § 2254(d) based on the record that was before the state court. Doc. 51 at 56. However, as argued *supra* at 7-9, there was no state court adjudication on the merits of this claim and thus § 2254(d) does not apply.

## III.   Conclusion

For the reasons set forth above, this Court should hold an evidentiary hearing to afford Mr. Hayes an opportunity to present his evidence to satisfy § 2244(b)(2)(B), to establish that he satisfies the *Schlup* miscarriage of justice standard, to rebut the state court findings under § 2254(e), and to otherwise establish that relief on his petition is warranted. Following the evidentiary hearing, this Court should find that habeas relief is warranted on Mr. Hayes' meritorious

constitutional claims and that the requirements of 28 U.S.C. § 2244(b)(2)(B) are met, and grant his petition for a writ of habeas corpus.

Respectfully submitted,

/s/ Lisa B. Freeland
Lisa B. Freeland
Federal Public Defender

/s/ Samantha L. Stern
Samantha L. Stern
Assistant Federal Public Defender
Pa. Bar No. 329688

Counsel for Petitioner Davon Hayes
