**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| DAVON RENEE HAYES, | ) | Civil Action No. 17-198 |
| Petitioner, | ) | |
| | ) | District Judge Joy Flowers Conti |
| v. | ) | Magistrate Judge Maureen P. Kelly |
| | ) | |
| ERIC TICE, *Superintendent of SCI Smithfield*; | ) | Re:  ECF No. 57 |
| THE ATTORNEY GENERAL OF THE | ) | |
| STATE OF PENNSYLVANIA; *and* | ) | |
| DISTRICT ATTORNEY OF ALEGHENY | ) | |
| COUNTY, | ) | |
| | ) | |
| Respondents. | ) | |

## <u>MEMORANDUM ORDER</u>

Currently before this Court is Petitioner's Motion for Leave to Conduct Discovery with Citation to Authority ("Discovery Motion"), which was filed on July 15, 2024.  ECF No. 57. Respondents filed a response in opposition on August 15, 2024.  ECF No. 61.  Petitioner replied on August 30, 2024.  ECF No. 63.  The Discovery Motion is ripe for adjudication.

For the reasons that follow, the undersigned concludes that Petitioner has shown good cause for at least some limited discovery.  However, the specific discovery demands, as set forth in both the Discovery Motion and Petitioner's Reply, are overbroad, unclear, and not narrowly tailored.  Accordingly, Petitioner will be given a period of time to submit amended discovery requests for this Court to review.

## I.    RELEVANT FACTUAL BACKGROUND AND PROCEDURAL HISTORY

In early 2017, Davon Renee Hayes ("Petitioner") filed a Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody (the "Petition").  ECF No. 4.  In the Petition, he sought to attack his convictions for criminal homicide, robbery, and conspiracy, in

connection with the murder of a store clerk. Petitioner previously filed a habeas petition in April 2013, attacking those very same convictions, which was dismissed as time-barred. Hayes v. Wenerowicz, No. 13-589 (W.D. Pa. Apr. 13, 2015), ECF No. 12.

The instant case was stayed and administratively closed on Petitioner's motion on March 17, 2017. ECF Nos. 5 and 7.

One year later, on March 20, 2018, the Clerk's Office received from the United States Court of Appeals for the Third Circuit an order that granted Petitioner authorization under 28 U.S.C. § 2244 to file a second or successive habeas petition (the "March 20, 2018 Third Circuit Order"). ECF No. 8. The Third Circuit directed that the District Court is to determine *de novo* all issues, including timeliness and exhaustion. Id.

In light of the March 20, 2018 Third Circuit Order, granting Petitioner leave to file a second or successive Section 2254 petition, This Court *sua sponte* appointed the Office of the Federal Public Defender, but limited the appointment to representing Petitioner in the federal habeas proceedings before this Court. ECF No. 12.

The stay continued while Petitioner litigated in state court. On November 14, 2023, Petitioner moved to reopen this case, asserting that available state court remedies had been exhausted. ECF No. 43. This Court lifted the stay and reopened this case on the following day. ECF No. 44.

On January 12, 2024, Petitioner filed the operative Amended Petition for Writ of Habeas Corpus. ECF No. 45. Respondents answered on April 8, 2024, ECF No. 49, however, the operative Answer was docketed on April 10, 2024, at ECF No. 51, as an Errata because the Answer at ECF No. 49 lacked certain required information in counsel's signature block. Petitioner submitted his Traverse on May 23, 2024. ECF No. 56.

In the operative Amended Petition, Petitioner attacks his convictions at Docket Nos. CP-02-CR-14894-2003, and CP-02-CR-1018-2004 in the Court of Common Pleas of Allegheny County, Pennsylvania, for: second degree murder, in violation of 18 Pa. C.S.A. § 2502(b), robbery involving the infliction of serious bodily injury, in violation of 18 Pa. C.S.A. § 3701(a)(1)(i), and criminal conspiracy, in violation of 18 Pa. C.S.A. § 903(a)(1).  ECF No. 45 at 12.  See also Docket, Com. v. Hayes, No. CP-02-CR-14894-2003 (CCP Allegheny Cnty.) (available at https://ujsportal.pacourts.us/Report/CpDocketSheet?docketNumber=CP-02-CR-0014894-2003&dnh=HMWRUxdRDmTrH9TQp%2BdLMg%3D%3D (last visited Nov. 21, 2024)).  See also Docket, Com. v. Hayes, No. CP-02-CR-1018-2004 (CCP Allegheny Cnty.) (available at https://ujsportal.pacourts.us/Report/CpDocketSheet?docketNumber=CP-02-CR-0001018-2004&dnh=kdZdwFP1aLgrx4Zw9tsqNg%3D%3D (last visited Nov. 21, 2024)).

The procedural history of this case is lengthy.  A brief summary of the facts and the relevant procedural history in state court is provided by the Pennsylvania Superior Court in its opinion affirming the denial of Petitioner's fifth – and most recent – petition for post-conviction relief pursuant to the Pennsylvania Post Conviction Relief Act ("PCRA"), 42 Pa. C.S.A. § 9541 et seq.

> As this Court explained in a memorandum affirming dismissal of Appellant's third PCRA petition:
>
>> Appellant confessed to being one of three persons who robbed a store in the East Liberty neighborhood of Pittsburgh on October 9, 2003. William Anderson, a clerk at the store, was shot to death during the robbery. Greg Herring and Victor Starr were Appellant's co-conspirators. Following a bench trial, Appellant was convicted of second degree murder, robbery, and conspiracy. On May 23, 2005, Appellant was sentenced to life in prison for the murder conviction and a concurrent sentence of five to ten years' imprisonment on the robbery

conviction. No additional sentence was imposed on the conspiracy conviction.

***Commonwealth v. Hayes***, No. 1919 WDA 2016, unpublished memorandum (Pa. Super. filed November 9, 2017).[1]

On direct appeal, this Court affirmed Appellant's judgment of sentence. Upon review of a petition for allowance of appeal, our Supreme Court remanded with direction for this Court to consider whether Appellant's confession should have been suppressed. On remand, we affirmed the judgment of sentence and, on April 9, 2008, our Supreme Court denied the subsequent petition for allowance of appeal. Appellant did not seek a writ of certiorari to the United States Supreme Court. Therefore, his judgment of sentence became final 90 days later, on July 8, 2008. ***See*** U.S.Sup.Ct.R. 13.1.

On January 21, 2009, Appellant filed a timely *pro se* PCRA petition, asserting approximately 50 errors committed by the trial court and allegedly ineffective trial and appellate counsel.[2] Counsel was appointed and filed a ***Turner/Finley***[3] no-merit letter, addressing each of the assertions raised in the petition. The PCRA court granted counsel's application to withdraw and dismissed Appellant's petition without a hearing on October 2, 2009. On October 13, 2010, we affirmed the dismissal.

On April 11, 2011, Appellant filed a second PCRA petition. Among the claims in that petition was an assertion of trial counsel ineffectiveness for failing to call alibi witnesses, including Miracle Smith and Princess Murphy. Second PCRA Petition, 4/11/11, at ¶¶ 23-30. On June 2, 2011, the PCRA court dismissed Appellant's petition. On July 10, 2012, we affirmed the dismissal.

On October 7, 2016, Appellant filed a third PCRA petition, which the PCRA court denied on November 16, 2016. On appeal, this Court affirmed. ***See Commonwealth v. Hayes***, No. 1919 WDA 2016, unpublished memorandum (Pa. Super. filed November 9, 2017). On September 5, 2018, our Supreme Court denied his petition for allowance of appeal.

In our dismissal of Appellant's third petition, we explained that the petition was facially untimely and we rejected Appellant's argument that his untimely petition was saved by the newly-discovered fact exception relating to statements from Darnell Clark and Richard Peterson and an affidavit from Antoine Lester. Both Clark and Peterson testified at the 2006 trial of Appellant's co-

conspirator Greg Herring, without implicating Appellant.[4] In his affidavit, Lester represented that he was standing next to Darnell Clark a few hours after the murder when Clark identified Herring and Starr to a detective as suspects and said Appellant was not one of the suspects.

While the appeal from dismissal of the third PCRA petition was pending before this Court, Appellant filed a motion to file newly-discovered evidence relating to a May 2017 affidavit signed by Darnell Clark. The PCRA court dismissed the petition on September 28, 2017 and Appellant filed an appeal to this Court on October 18, 2017. On October 25, 2018, we affirmed, noting that the motion, which the PCRA court treated as a fourth PCRA, was a legal nullity in light of the pending appeal from the dismissal of Appellant's third PCRA petition. The Court advised Appellant that he had 60 days from September 5, 2018—the date the Supreme Court denied his petition for allowance of appeal involving the third PCRA petition—to file another PCRA petition relating to the Clark affidavit. *Commonwealth v. Hayes*, 1617 WDA 2017, unpublished memorandum (Pa. Super. filed October 25, 2018).

On November 7, 2018, Appellant filed the instant *pro se* PCRA petition, his fifth, asserting that the Clark affidavit was after-discovered evidence and qualified as an exception to the PCRA's timeliness requirements.[5] In addition, Appellant asserted ***Brady*** claims, also with respect to the Clark affidavit, in support of a governmental interference exception to the timeliness requirements. On November 28, 2018, counsel entered an appearance on Appellant's behalf. After several extensions were granted, on July 31, 2020, counsel filed an amended 55-page PCRA petition to which eight exhibits, spanning an additional 36 pages, were attached.

By order entered August 10, 2020, the PCRA court directed the Commonwealth to file a response. After Appellant filed a motion to amend the amended PCRA petition to include an additional affidavit, the Commonwealth sought and obtained extensions before filing its response on March 15, 2021. Appellant's counsel sought the opportunity to reply to the Commonwealth's response. Counsel also sought an additional amendment to the petition to include another witness statement. On June 10, 2021, the Commonwealth filed its response to which Appellant's counsel filed a reply on July 12, 2021.

On March 25, 2022, Appellant's counsel requested a status hearing. Because the trial judge, who also presided over the earlier PCRA

petitions, passed away in October 2020, the case was reassigned to the Honorable Elliot C. Howsie, who scheduled and then conducted the status hearing on April 20, 2022.

At the conclusion of the hearing, the PCRA court issued a Rule 907 Notice of its intent to dismiss the petition as untimely. Appellant did not file a response. On July 13, 2022, the trial court entered an order dismissing the petition. This timely appeal followed. Both Appellant and the trial court complied with Pa.R.A.P. 1925.

[1] In a footnote to the memorandum, the Court explained that additional details regarding the factual background and procedural history of the case were provided in *Commonwealth v. Hayes*, No. 1094 WDA 2005, unpublished memorandum (Pa. Super. filed October 30, 2007) (direct appeal); *Commonwealth v. Hayes*, No. 1794 WDA 2009, unpublished memorandum (Pa. Super. filed October 13, 2010) (first PCRA petition); and *Commonwealth v. Hayes*, No. 1025 WDA 2011, unpublished memorandum (Pa. Super. filed July 10, 2012) (second PCRA petition). *Id.* at 1 n.1.

[2] Included in the claims was an assertion that trial counsel was ineffective for failing to call Appellant's alibi witnesses. *See* Pro Se Petition, 1/21/09, Part C, at 3 ¶ D (unnumbered).

[4] A jury convicted Herring of second-degree murder and he was sentenced to life in prison without the possibility of parole. The individual identified as Starr was never charged or brought to trial.

Com. v. Hayes, 305 A.3d 1017 (Table), Nos. 918 WDA 2022 and 919 WDA 2022, 2023 WL 6307637, at *1-3 (Pa. Super. Ct. Sept. 28, 2023) (footnotes 3 and 5 omitted).

Petitioner's confession was discussed in the Supplemental Report dated October 10, 2003, ECF No. 45-2 at 12-15, as well as in the trial testimony of Detective Dennis Logan, ECF No. 45-1 at 127-40. Detective Logan's contemporaneous notes of the interview with Petitioner underlying that Supplemental Report – which Logan testified had been reviewed and signed without changes by Petitioner – were discussed and marked as Exhibit 19 at trial by the

prosecution.[1]  Id. at 137-40.  A motion to suppress the confession was denied after a hearing on March 1, 2005 – just before Petitioner's non-jury trial began.  Id. at 105.

At trial, Petitioner testified and attempted to refute the confession.  Id. at 141-48. Detective Cynthia Smith was called to rebut Petitioner's testimony.  Id. at 154-58.  She testified that she was present at the interview when Petitioner was read his rights, id. at 155-56, as well as when Petitioner admitted his involvement in the murder, id. at 157-58.

The Pennsylvania Superior Court affirmed the denial of Petitioner's fifth PCRA petition on September 28, 2023.  Hayes, 2023 WL 6307637, at *1.  There is no indication in the record that Petitioner filed a petition for allowance to appeal to the Pennsylvania Supreme Court.  See, e.g., Docket, Hayes, No. 918 WDA 2022(available at https://ujsportal.pacourts.us/Report/PacDo cketSheet?docketNumber=918%20WDA%202022&dnh=4klc1CgsYiJs4YCnkshaxA%3D%3D (last visited Nov. 21, 2024)).

The record does not indicate that Petitioner ever has had a hearing on the merits of any of his PCRA petitions.

## II.    THE OPERATIVE AMENDED FEDERAL HABEAS PETITION

### A.    Grounds for Relief

Petitioner raises the following claims in the operative Amended Petition.

Ground One:    The prosecution violated its obligation under Brady v. Maryland to disclose exculpatory or impeachment evidence by failing to disclose statements made by Darnell Clark and Richard Peterson; specifically for failing to disclose that:

> (1) During a "show up" on Auburn Street on October 9, 2003, Clark told police that Petitioner was not one of the three men he saw on Moga Street the day of the shooting;

---

[1] The Court was unable to locate Detective Logan's contemporaneous notes of his interview with Petitioner in the record in this case.

(2) Clark was reluctant to testify in Petitioner's trial; and

(3) Peterson gave an inculpatory statement against Greg Herring and Victor Starr that did not include Petitioner in March of 2005 – after Petitioner's conviction, but prior to his sentencing.

ECF No. 45 at 1-3, 18-19, and 30-31. See also ECF No. 51 at 3. This ground was considered by the Third Circuit when it granted permission for Petitioner to proceed with a second or successive federal habeas petition. ECF No. 8; see also Appl. for Leave to File Second or Successive Pet., In re Hayes, No. 18-1201 (3d Cir. filed Feb. 6, 2018), ECF No. 1 at 32.

> Ground Two: The prosecution violated its obligation under Brady by failing to disclose Miracle Smith's October 12, 2003 statement to police.

ECF No. 45 at 59-60. See also ECF No. 51 at 3.

> Ground Three: Alternatively, trial counsel was ineffective for failing to make use of Miracle Smith's October 12, 2003 statement at trial.

ECF No. 45 at 65. See also ECF No. 51 at 3.

> Ground Four: Petitioner is actually innocent.

ECF No. 45 at 70. See also ECF No. 51 at 3. This claim also was considered by the Third Circuit when it granted permission for Petitioner to proceed with a second or successive federal habeas petition. In re Hayes, No. 18-1201, ECF No. 1 at 32.

## B.    The Evidence at Issue

The operative Amended Petition relies on several articles of evidence which Petitioner alleges relate to witness statements that were suppressed by the prosecution.

### 1.    Darnell Clark

The first item of evidence is the affidavit of Darnell Clark ("Clark") dated May 24, 2017.[2]  ECF No. 51-2 at 32-37.  In this affidavit, Darnell Clark describes his observations of events of October 9, 2003 – the day of the murder.

It begins with Clark observing "three black men loitering by the side of a house on Moga Street" sometime between midmorning and lunch time, as he was being driven through the East Liberty neighborhood of Pittsburgh.  Id. at 36.  Clark recognized one of those men as "Little Wick," which was an alias for Greg Herring ("Herring").[3]  Id. at 36-37.

Sometime after seeing the three men, Clark was called and informed that his uncle had been shot and killed.  Id. at 36.  Clark went to the scene of the killing, where he encountered police.  Id.  Clark informed police of the three men that he had observed earlier, took the police to the location where he had seen them, and then left.  Id.

Mid-afternoon the same day, Clark was called to Auburn Park by police in order to identify the three men that he had seen earlier that day.  Id.  "[S]everal men and women were

---

[2] The Court acknowledges that there are many people involved in this case, several of whom have aliases.  Accordingly, in order to aid the reader, brief explanations of the identities of a few key individuals will be provided in footnotes, even though that information might appear elsewhere in this Memorandum Order.

Darnell Clark ("Clark") is an individual who saw Greg Herring near the scene of the killing prior to the murder.  He later identified Herring at Auburn Park sometime after the murder.  He is relevant to this case because Petitioner alleges that Clark affirmatively refused to identify Petitioner at Auburn Park.  As set forth more fully below, Petitioner's characterization of this event is disputed.

[3] Greg Herring ("Herring"), also referred to at various times in the record as "Greg D. Herring," "Little Wick," "Wick," "Whip," and "Greg James," was the individual identified by Clark in Auburn Park on October 9, 2003.  He was convicted of second degree murder for the same killing of which Petitioner was convicted, but at a separate trial.  Clark testified at Herring's trial, but not at Petitioner's trial.

detained" at the park. Police pointed a finger at one of the detainees, and Clark informed police that he did not recognize him. Id. Clark informed the police that he recognized a second detainee as "Little Wick," one of the men that he had seen near Moga Street earlier that day. Id. Police then asked whether Clark recognized anyone else, and he responded, "No I only recognized the one guy." Id. Clark then accompanied police to a police station, where he was pressured by police to state that he saw the men running out of the store where his uncle had been murdered; however, Clark refused because that would have been untrue. Id.

Finally, Clark stated that he knew Petitioner, and that Petitioner was not one of the three individuals that he saw on Moga Street the morning of the murder. Id. at 37. Clark would have recognized and identified Petitioner. Id. Had Clark been asked to testify at Petitioner's trial, he would have testified as to the same. Id.

Importantly, Clark does not state in his affidavit that he saw Petitioner in Auburn Park when he identified Herring, or that he denied to police that Petitioner was one of the men he saw on Moga Street earlier that day, or that he refused to identify Petitioner when prompted to do so.

Petitioner does not state in the Amended Petition the specific date that he discovered the factual predicate underlying Clark's 2017 affidavit; however, he claims to have first discovered that Clark testified at Herring's trial sometime in June of 2016. ECF No. 45 at 14. An intermediary mailed Clark's affidavit to Petitioner on or about May 25, 2017. Id. at 21.

Police prepared a "Supplemental Report" that, in part, relayed their interaction with Clark on October 9, 2003. It states the following, in pertinent part.

> [T]he detectives returned to the shooting scene, a little after 1400 hrs., and ran into a witness Darnell Clark, who stated that he is the nephew of the victim, Anderson. Clark stated that he had received a telephone call from his cousin, Shawn Featherstone, who was crying at the time, and told Darnell that his father had been killed. Clark stated that was the reason he came to the scene, to find out

10

what happened. Clark said that Featherstone immediately hung up the telephone after this call.

Clark advised about two hours before he was called by Featherstone, he and a Brandon Thompson were in the general area of Moga St. and Collins Ave., on their way to get something to eat. While Thompson was driving down Moga St., Clark noticed three suspicious black males sitting on some steps, on the side of 708 Moga St., which was a private home. One of these males was known by Clark as being "LITTLE WICK". Clark did not know the guys real name, but described him as being a medium compleced black male, tall, slender build, 19-20 yoa., wearing a black cap, and black sweat top. Clark said that "Wick" may have gotten shot two months ago at Peabody H.S.

Clark walked Detective Fox and myself, back to this location. While looking around in a wooded area beside this house, the detectives found a black hooded sweat shirt and a bl nylon type waist length jacket lying in some bushes. MCU 3558, Detective Blaze Krae [missing] was notified of these findings, and thereafter responded to that area. Soon after the K-9 unit also responded. Clark was then told that he could leave, and that someone would [missing] getting back to him in the near future.

The reporting detectives returned to the Investigations Branch. Upon our arrival Detective Blaze Kraeer transmitted over radio that the suspects were seen over on Auburn St. Ourselves, along with Lt. Kraus, Sgt. McComb, and Detective Hanlon, responded to this location, eventually meeting up with Detective Kraeer and the K-9 Officer. At this location was a Victor Venay,Dob 9/19/84, of 332 Collins Ave. Pgh. [missing] 15206,.h/p-412-661-3860, and a Greg D. Herring, Dob. 10/4/84, of 636 Collins Ave [missing] identification purposes, Darnell Clark was called to this location, 6200 block of Aub [missing] St. Clark arrived at this location and identifying Greg Herring as being, "LITTLE WICK", and saying that he was one of the three he saw earlier on Moga St.This identification was made at 1520 hrs .

Clark advised that about five or ten minutes after he had left Detective Fox and myself, he saw Herring along with two other black males walking towards the Meadow St. bridge from Larimer Ave. Herring and the two then made a left turn onto Auburn St. right before the bridge. Clark said he drove back to Moga St., only

> to see that Detective Fox and myself were gone. Clark then alerted
> Detective Kraeer, who was still on Moga St.

ECF No. 51-2 at 44-45 (typographical errors as in the original).

Adding additional context – and some confusion – to Clark's affidavit is Petitioner's own affidavit executed in 2011, in which he avers that he and other individuals – including Miracle Smith ("Smith")[4] – witnessed Clark identify ***both*** Herring ***and*** Victor Starr ("Starr")[5] at Auburn Park on the date of the murder. ECF No. 51-2 at 39-40. Specifically, Petitioner arrived at Auburn Park at approximately 12:25 PM on the date of the murder. Id. at 39. He and his group saw Starr and Herring arrive a few minutes later. Id. At approximately 12:35 PM, police arrived at the park with Clark. Clark "pointed to" Starr and Herring, who were then arrested. Id. There is no indication in the affidavit whether Petitioner heard any statements made by Clark as this identification happened.

Further, Petitioner also submits affidavits executed by Antoine Lester ("Lester") dated August 24, 2016 and July 24, 2020. ECF No. 51-3 at 1-4. Taken together, Lester indicates in these affidavits that he was part of a group of people, which included both Smith and Petitioner, who witnessed Clark's identification of Herring and Starr in Auburn Park on the date of the

---

[4] Miracle Smith was Petitioner's fifteen year-old girlfriend at the time of the murder. A statement given by Smith to police on October 12, 2003 – three days after the killing – is the subject of Ground Two and Ground Three of the Amended Petition, and is discussed in more detail below.

[5] Victor Starr also is referenced at various points through out the record as "Victor Star," "Star," "Vick," "Vic," "Victor Fenay," and "Victor Venay." He is alleged to have been the third actor in the murder on October 9, 2003, although the record does not indicate that he ever was charged.

murder.[6]  Lester indicates that the police showed up a few hours after Herring and Starr arrived in the park, and that he, Smith, and Petitioner were among the group of people who were detained by police during the identification. Id. at 1.  Lester averred that he was standing next to Clark as he identified both Herring and Starr, and that he heard Clark "telling the detectives that Davon Hayes was not one of the suspects" in his 2016 affidavit. Id. at 2.  Lester walked this back slightly in his 2020 affidavit, and averred that he would have testified that "when he was asked to identify someone other than Greg Herring and Victor Starr, Darnell Clark did not identity Davon Hayes in the park on October 9, 2003." Id. at 4.

Also of relevance to the instant federal habeas petition, Clark was detained on $250,000 bond shortly before he testified at Herring's trial.  ECF No. 51-2 at 1-8.  Clark stated that he did not want to cooperate.  Id. at 2.  The prosecution had prepared a written motion on the subject. Id. at 4; ECF No. 51-3 at 36.  In the motion – the specifics of which do not appear in the trial transcript – the prosecution argues that:

> The Commonwealth believes and avers that in light of Mr. Clark's ***reluctance to testify at the trial of Devon Hayes***, representations made by his family members, the inability of detectives to locate Mr. Clark, and his failure to appear for a pre-trial interview, a bail requirement that Darnell Clark remain on house arrest with conditions to be set by the Court would be appropriate in this case.

Id. at 37 (emphasis added). [7]

_____

[6] Petitioner does not identify Lester as part of his group in his 2011 affidavit.  In a subsequent affidavit dated July 24, 2020, Petitioner avers that he was informed by Lester on August 16, 2016, that Lester was in Auburn Park the date of the murder.  ECF No. 51-2 at 42-43.

[7] This is somewhat inconsistent with Clark's 2017 affidavit, in which he avers that "Had I been asked to testify at Davon Hayes' trial I would have truthfully stated that he was not one of the three men I saw on the morning of the murder."  ECF No. 51-2 at 37.

At Herring's trial, Clark's testimony was generally consistent with the police report and his 2017 affidavit. ECF No. 51-2 at 9-35. Relevant differences of note were that he no longer could remember the specific timing of events. Id. at 11("I don't know the timeframe because it's been so long ago"); id. at 25 (uncle shot "maybe a half hour or hour" after he saw Herring); id. at 22-23 (possibly two or three hours between seeing Herring and being notified of the murder). Also notably, he testified that he was asked to identify two individuals, including Herring, at the park. Id. at 16. Petitioner's name was not mentioned during Clark's testimony.

Clark's reluctance to testify at Herring's trial was clear from the transcript, as discussed above. ECF No. 51-2 at 1-8. Without deciding, it seems likely that this information was discovered at least as early as July of 2016, when Petitioner received the transcripts of Herring's trial. Id. at 42. However, in the Amended Petition, Petitioner's counsel indicate that it was not until sometime in 2018 - when they received the written Application for Detention of a Material Witness filed April 24, 2006 in Herring's case - that they discovered the fact that Clark's testimony had been sought by the prosecution at Petitioner's trial, and that Clark had been reluctant to appear. ECF No. 45 at 21.

### 2. Richard Peterson

The second item of evidence is a statement made by Richard Peterson ("Peterson") – who also is known as "Richard Hicks." ECF No. 45 at 18; ECF No. 51 at 38 n.16. Like Clark, Peterson appeared at Herring's trial, during which he testified that he never provided information to police regarding Herring on March 16, 2005. ECF No. 51-4 at 6. Peterson's tape-recorded statement of the same date was played for the jury. ECF No. 45-1 at 433.

In that statement, Peterson stated that Herring and Starr came to his home on the afternoon of October 9, 2003, during which time Herring stated that Starr killed a man at the

candy store because the victim would not "give it up."  Petitioner was not mentioned in Peterson's statement.  ECF No. 45-3 at 147-51.

Once again, Petitioner does not clearly state in the Amended Petition the date on which he discovered Peterson's statement.  This Court presumes, without deciding, that it was when he received the transcripts of Herring's trial sometime in July of 2016.  See ECF No. 51-2 at 42.

### 3.    Miracle Smith

The final piece of evidence underlying Petitioner's federal habeas claims is a statement by Smith to police, which was memorialized in the "Supplemental Report" dated October 12, 2003.  ECF No. 51-11 at 68-69.

According to the "Supplemental Report," Smith indicated that she was Petitioner's fifteen year-old girlfriend at that time.  Id. at 68.  The gist of the statement was that the murder was committed by Victor Starr and "Gregory James," individuals that she had known for at least two years.[8]  Starr and "James" were acquaintances of Petitioner.  Id. at 68-69.

Smith indicated that, on the date of the murder, between 1:30 PM and 2:00 PM, she and Sabrina Brown, the girlfriend of "James," received a telephone call at Smith's home from Starr. Id. at 68.  Starr allegedly told Smith that he and James sent a third person into a store on Sheridan Street to see whether any customers were present.  After being informed that no customers were present, Starr and "James" robbed the store.  After the clerk attempted to defend himself with a handgun that ultimately jammed, James shot the clerk twice in the back.  Id.  As they fled the scene, they dropped a handgun, ski mask, black hoodie, and some amount of

---

[8] Petitioner indicates that "Greg James" is actually Herring.  ECF No. 45 at 60.  This assertion appears to be undisputed by Respondents.

cocaine in an alley near the store.  Id.  Starr stated on the phone that he and Brown attempted to return to retrieve the discarded items, but there were too many police in the area.  Id. at 68-69.

According to the Supplemental Report, Smith also stated that, prior to the telephone call with Starr, she was at Omega Park with friends, including Brown.  Starr approached them and asked Brown to do him a favor.  Brown and Starr left.  About half an hour later, Brown returned, and stated that she had served as a lookout for Starr as he attempted to retrieve the aforementioned discarded items from the crime scene.  Id. at 69.

Smith also stated that Hayes had called her from jail on October 12, 2003, and told her that he had been charged with a homicide that "Greg and Victor" had committed.  Id.

Petitioner's habeas counsel assert that they previously had obtained trial counsel's file in this matter, but that the Supplemental Report of the police's October 12, 2003, interview with Smith was not in the file.  ECF No. 45 at 24.

It is unclear from the operative Amended Petition exactly when Petitioner became aware of this Supplemental Report.  Petitioner's habeas counsel asserts that it was obtained on March 11, 2021 when the Allegheny County District Attorney's Office provided records at Petitioner's counsel's request.  ECF No. 45 at 22 and 67-68.  But the record also shows that police prepared a subsequent Supplemental Report, dated January 8, 2004, which states that it was a clarification of Miracle Smith's statement of October 12, 2003.  ECF No. 51-4 at 16.  In this later report, Smith identifies Starr and Herring from photo arrays.  Id.  There appears to be no dispute that Petitioner was provided the January 8, 2004 Supplemental Report prior to trial.

There appears to be at least some dispute as to whether the Supplemental Report dated October 12, 2003, memorializing Smiths' statement was included in the discovery packet provided to Petitioner prior to trial.  Petitioner hedges his bets by raising an alternative

ineffective assistance of counsel claim, in case trial counsel was in possession of the Miracle Smith statement.

Petitioner bases his actual innocence claim at Ground Four on the evidence set forth above. ECF No. 45 at 71-72.

## III.   THE DISCOVERY MOTION

### A.   Standard for Discovery in Federal Habeas Proceedings

"A habeas petitioner, unlike the usual civil litigant in federal court, is not entitled to discovery as a matter of ordinary course." Bracy v. Gramley, 520 U.S. 899, 904 (1997); Harris v. Nelson, 394 U.S. 286, 297 (1969) ("broad-ranging preliminary inquiry is neither necessary nor appropriate in the context of a habeas corpus proceeding."). Discovery is authorized in Rule 6(a) of the Rules Governing Section 2254 Cases in the United States District Court only by leave of court upon a showing by the petitioner of "good cause," which may be made "where specific allegations before the court show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is … entitled to relief[.]" Harris, 394 U.S. at 300; see also Bracy, 520 U.S. at 908-09; Lee v. Glunt, 667 F.3d 397, 404 (3d Cir. 2012).

"The burden rests upon the petitioner to demonstrate that the sought-after information is pertinent and that there is good cause for its production." Williams v. Beard, 637 F.3d 195, 209 (3d Cir. 2011). "[B]ald assertions and conclusory allegations do not provide sufficient ground to warrant requiring the state to respond to discovery[.]" Zettlemoyer v. Fulcomer, 923 F.2d 284, 301 (3d Cir. 1991); Mayberry v. Petsock, 821 F.2d 179, 185 (3d Cir. 1987) (same). Additionally, Rule 6 does not authorize what is commonly referred to as "fishing expeditions," and it is not enough for a petitioner to speculate that the discovery he seeks might yield information that would support one of his claims or that it would give support to a new claim.

17

See, e.g., Deputy v. Taylor, 19 F.3d 1485, 1493 (3d Cir. 1994) (quoting with approval Munoz v. Keane, 777 F. Supp. 282, 287 (S.D.N.Y. 1991) ("petitioners are not entitled to go on a fishing expedition through the government's files in hopes of finding some damaging evidence")).

Further, where an assessment of a habeas petition reveals that it fails on some legal ground, the proper course is to deny motions seeking factual discovery. Brown v. DiGuglielmo, No. 07-3465, 2007 WL 4242266, at *1 n.2 (E.D. Pa. Nov. 29, 2007) (citing Williams v. Bagley, 380 F.3d 932, 974-76 (6th Cir. 2004)) (noting that discovery requests relating to procedurally defaulted claims were properly denied because discovery could not lead to a colorable basis for relief on those claims); Peterkin v. Horn, 30 F. Supp. 2d 513, 518-20 (E.D. Pa. 1998) (same). see also Rega v. Wetzel, No. 13-cv-1781, 2014 WL 4079949, at *2 (W.D. Pa. Aug. 18, 2014); Tedford v. Beard, No. 09-cv-409, 2010 WL 3885207, at *4 (W.D. Pa. Sept. 28, 2010) ("Because a petitioner in a § 2254 case must first exhaust any claim in state court before he brings it in federal court, a federal court must, in considering a state prisoner's motion for discovery, take into account any lack of diligence on the petitioner's part in developing the record in state court.").

## B.    Analysis

In the Discovery Motion, the bulk of Petitioner's argument that good cause for discovery exists centers around Clark's statement at the October 9, 2003 "show up" at Auburn Park. See generally, ECF No. 57. Any argument in the Motion that good cause for discovery exists with respect to Peterson or Smith is sparse by comparison. This tenor continues in Petitioner's Reply. See, generally, ECF No. 63.

Petitioner also asserts in the Discovery Motion that good cause is shown because Respondents abandoned the prosecution's theory in its prosecution of Greg Herring by changing

the timeline of when Clark observed Herring and other individuals on the day of the murder. ECF No. 57 at 5 and 10.  Respondents deny that they have changed their theory.  ECF No. 61 at 3 n.1.  Despite having raised it himself in his Discovery Motion, Petitioner asserts in his Reply that this argument is a distraction. ECF No. 63 at 1.

Respondents assert that discovery should be denied because the Petition lacks merit. ECF No. 61 at 3-4.  In their Answer, Respondents argue that each of Petitioner's claims is time-barred, procedurally defaulted, or both.  ECF No. 51 at 17, 20, 25, 35, 38, 47, and 50.  The sole exception is Petitioner's claim of actual innocence, which Respondents argue is not a cognizable basis for federal habeas relief, but instead is just a gateway to overcome a procedural defect, such as failing to raise a claim within the statute of limitation or procedural default in state court.  Id. at 53.

When it comes to specific bases for relief, the operative Amended Petition and Discovery Motions are not models of clarity.  Instead, the briefing is dense, and appears to obscure relevant information rather than to highlight it for the Court's attention.  That said, after a thorough and lengthy review of the record in this matter, and considering that the Third Circuit has granted permission for Petitioner to proceed with a second or successive federal habeas petition, the undersigned concludes that Petitioner has demonstrated good cause for at least some discovery.[9]

Be that as it may, Petitioner's specific discovery demands are unclear and, to the extent that the undersigned can attribute any scope to them, overbroad.  For example, in the pending Discovery Motion, ECF No. 57, Petitioner seeks the following discovery from Respondents.

---

[9] For clarity, this should not be read as a determination that Petitioner is able to overcome any procedural bar, or that Petitioner has met his burden under 28 U.S.C. § 2244(b)(2).  This Court expressly reserves judgment on those issues.

Any and all Allegheny County District Attorney file(s) pertaining to the investigation of the October 9, 2003 shooting of William Anderson, including but not limited to the investigation of Gregory Herring, Davon Hayes, and Victor Starr (AKA Victor Venay, Victor Star, Victor Fenay), and including but not limited to the following:

- All materials relating to communication with Darnell Clark, Davon Hayes, Greg Herring, Miracle Smith, Richard Peterson (AKA Ricky Hicks), and Victor Starr (AKA Victor Venay, Victor Star, Victor Fenay) in connection with the investigation and prosecution of the October 9, 2003 shooting of William Anderson, including reports, notes, memoranda, communications (email and written), written statements, and recordings;

- All materials relating to any suspect identification procedures conducted in connection with the investigation and prosecution of the October 9, 2003 shooting of William Anderson (including but not limited to the show up conducted on October 9, 2003), including photo arrays, reports, notes, memoranda, communications (email and written), written statements, and recordings;

- Inspection and examination of the exhibits from Commonwealth v. Herring, Allegheny County Court of Common Pleas, Criminal Division, CC 2005-10184; and

- Inspection and examination of all physical evidence from the investigation of the October 9, 2003 shooting death of William Anderson.

Any and all Pittsburgh Police file(s) concerning the October 9, 2003 shooting of William Anderson, including, but not limited to:

- Any and all files, notes, memoranda, reports, communications (email and written) of Detective Dennis Logan concerning the investigation and related prosecutions;

- Any and all files, notes, memoranda, reports, communications (email and written)

documenting the Pittsburgh Police Department's impressions of Detective Dennis Logan and his investigation practices;

- All materials relating to communication with Darnell Clark, Davon Hayes, Greg Herring, Miracle Smith, Richard Peterson (AKA Ricky Hicks), and Victor Starr (AKA Victor Venay, Victor Star, Victor Fenay) in connection with the investigation and prosecution of the October 9, 2003 shooting of William Anderson, including reports, notes, memoranda, communications (email and written), written statements, and recordings;

- All materials relating to any suspect identification procedures conducted in connection with the investigation and prosecution of the October 9, 2003 shooting of William Anderson (including but not limited to the show up conducted on October 9, 2003), including photo arrays, reports, notes, memoranda, communications (email and written), written statements, and recordings; and

- City of Pittsburgh Police Department policy concerning interviewing, questioning, and interrogation of criminal suspects in effect in 2003.

ECF No. 57-1 at 1-2.

In his Reply, Petitioner expressed his willingness to revise his demands to the following request.

> [M]aterials within law enforcement files relating to (1) statements of Darnell Clark, Richard Peterson, and Miracle Smith, and (2) any suspect identification procedures – as specified in Mr. Hayes' motion for discovery. *See* Doc. 57 at 13.

ECF No. 63 at 4. At first reading, this revised demand appears to be narrower than Petitioner's initial one. However, Petitioner's incorporation of the earlier demand from the Discovery Motion renders unclear the actual scope of the discovery that Petitioner seeks. For example, to

21

the extent that this incorporation includes "[a]ny and all Allegheny County District Attorney file(s) pertaining to the investigation of the October 9, 2003 shooting of William Anderson," ECF No. 57 at 13, such discovery is beyond what Petitioner could expect even at trial. Cf. Tedford, 2014 WL 4828873, at *12 ("The Commonwealth also persuasively argues that Petitioner's request is misplaced because it rests upon the faulty premise that his defense was entitled to the [State Police's] entire file prior to his trial. It points out that a criminal defendant has no legal entitlement to review the prosecution's entire investigative file, either before, during, or after trial."). Indeed, the Advisory Committee Notes to Rule 6 of the Rules Governing Section 2254 Cases admonish that discovery in a habeas case must be "relevant and appropriately narrow."

But it is not this Court's role *sua sponte* to pare down Petitioner's discovery demands. Instead, Petitioner's counsel is in a much better place to determine what specific information they need to effectively litigate this case on behalf of their client.

## IV.    CONCLUSION

For the reasons set forth herein, Petitioner's Discovery Motion will be granted in part and denied without prejudice in part. Discovery based on the existing demands will be denied because they are unclear and overbroad. However, because Petitioner has shown good cause for at least some discovery, he will be allowed to submit "relevant and appropriately narrow" discovery demands within 21 days of this Order for this Court's review. Petitioner is cautioned that discovery based on unclear, irrelevant, or overbroad demands will be denied.

An appropriate Order follows.

AND NOW, this 21st day of November, 2024, IT IS HEREBY ORDERED that Petitioner's Motion for Leave to Conduct Discovery with Citation to Authority, ECF No. 57, is GRANTED in part and DENIED WITHOUT PREJUDICE in part.    Petitioner is DENIED permission to propound the discovery requests set forth in his Discovery Motion and his Reply. On or before 21 days from the date of this Order, Petitioner may submit the narrowly tailored amended discovery requests for this Court's review, as set forth herein.

IT IS FURTHER ORDERED that, in accordance with the Magistrate Judges Act, 28 U.S.C. § 636(b)(1), and Rule 72.C.2 of the Local Rules of Court, the parties are allowed fourteen (14) days from the date of this Order to file an appeal to the District Judge which includes the basis for objection to this Order.    Any party opposing such an appeal may respond within fourteen (14) days thereafter.

Any appeal is to be submitted to the Clerk of Court, United States District Court, 700 Grant Street, Room 3110, Pittsburgh, PA 15219.    Failure to file a timely appeal will constitute a waiver of any appellate rights.

BY THE COURT:

MAUREEN P. KELLY
UNITED STATES MAGISTRATE JUDGE

cc:    Hon. Joy Flowers Conti
       United States District Judge


       All counsel of record (*via* CM/ECF)